1998 ME 74

The CARVEL COMPANY

v.

SPENCER PRESS, INC.

Supreme Judicial Court of Maine.

Argued Dec. 4, 1997.
Decided April 8, 1998.

Martin J. Foley (orally), Wilson, Fernald & Foley, Portland, for plaintiff.

Gordon C. Ayer (orally), Spencer Press, Inc., Wells, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

ROBERTS, Justice.

[¶ 1] Spencer Press, Inc., appeals from the judgment of the Superior Court (Cumberland County, *Calkins, J.*) awarding The Carvel Company damages for breach of contract as well as attorney fees, a late payment penalty, and interest. Carvel cross-appeals, contesting the court's computation of damages and the interest award. Because we conclude that Carvel was not entitled to damages, we vacate the judgment.

## I.

[¶ 2] Spencer Press is a printing company that prints third class mail. When Spencer's Wells facility was constructed in 1980, Carvel did the mechanical work. Between 1980 and 1994, Spencer employed Carvel almost exclusively to serve its mechanical and plumbing needs. However, Spencer did put out to bid "significant repair[s] or addition[s] to the mechanical facility at the plant"; they were not automatically awarded to Carvel.

[¶ 3] In 1993 Spencer discussed with Carvel the plumbing and mechanical aspects of a proposed expansion of its manufacturing and office facilities. Although Spencer had selected Berry & Son to be the construction manager for the expansion, Spencer chose to withhold the mechanicals from Berry & Son because "[it] had dealt with Carvel since [it] had built the original building." Steven Carvel, the president and majority stockholder of Carvel, understood that Carvel was to complete the expansion on a "design build" basis. A design build contract is one in which the owner selects a contractor to both design and build the installation. Steven Carvel acknowledged that only three of the approximately five hundred contracts that Carvel has performed in the last twenty years were design build contracts. In contrast to Carvel's understanding, Ron Spenlin-hauer, chief executive officer of Spencer, understood that Carvel was only to prepare engineering designs for the mechanicals portion of the plant and office additions. Spenlinhauer intended to use the designs to solicit bids from mechanical contractors or, alternatively, to employ Carvel to construct the expansion if its prices were competitive. Spenlinhauer denied ever using the term "design build" during his discussions with Carvel.

[¶ 4] On January 7, 1994, Carvel sent a purchase order request to Spencer that stated:

> We request a purchase order for the mechanical design work for the office and plant additions.
>
> We request that you allocate $25,000 for this work. Once we can finalize the exact scope of work, we can adjust this estimate up or down. We will invoice you monthly against this budget.

Spencer issued the purchase order, which constitutes the entire contract between the parties.

[¶ 5] On March 25, Carvel submitted cost proposals for the office expansion to Spencer. Spencer subsequently asked Carvel to break down its cost projections. On April 25, Spencer informed Steven Carvel that the mechanical work for the expansion project would be put out to bid. On April 28, Spencer instructed Berry & Son to solicit bids for the mechanical aspect of the expansion project.

[¶ 6] On May 6, Carvel delivered to Spencer the mechanical specifications and drawings for the office addition. The delivery did not include any final design work of its consulting engineer. Also on this date, Carvel wrote a letter to Spencer stating:

> We offered our services as a design build contractor which is a team approach working directly with you as the owner. We are not a consulting engineering firm ... that produces plans and specifications for competitive bidding purposes.
>
> It has always been my understanding that our design services would be for our internal use not intended to be distributed for

our competitors to use in the preparation of their bids.

Subsequently, on May 9, Steven Carvel called officials at Spencer to reiterate that his designs were not intended to be put out to competitive bid. Spencer then forwarded Carvel's plans to Berry & Son, requesting that Berry & Son determine whether "they are complete enough and contain sufficient information to put this job out to bid." On May 19, Spencer instructed Berry & Son to design the mechanicals for the expansion.

[¶ 7] Sometime before June 3, Spencer decided to postpone the office addition because of the rising costs of the expansion project. On June 3, Carvel forwarded its consulting engineer's plant and office designs to Spencer. These designs did not bear an engineer's seal or signature. To the contrary, each design bore the disclaimer: "This drawing is for the exclusive use of the Carvel Company for a design/build project at Spencer Press, Wells, Maine. This is a progress working drawing in the design/build process, for installation only depicting a system concept, not a final design." The lack of an engineer's seal and signature and the presence of the disclaimer prevented Spencer from using Carvel's designs to put the plant expansion out to bid. Due to time constraints, Spencer then put the plant expansion out to bid as a design build project; Carvel's bid exceeded all other bids received by approximately $80,000 to $90,000.

[¶ 8] Carvel ultimately submitted to Spencer four invoices totaling $36,896.22, but Spencer made no payment to Carvel. Carvel initiated this action, alleging that it is entitled to recover $36,896.22 for breach of contract, or the reasonable value of its labor and materials in *quantum meruit*, or the unjust enrichment conferred on Spencer in the form of its labor and materials. Carvel also sought statutory interest, penalties, and reasonable attorney fees pursuant to the Construction Contracts Act, 10 M.R.S.A. §§ 1111–1120 (1997).

[¶ 9] The court concluded that the contract between the parties called "for Carvel to do 'the mechanical design work for the office and plant additions,'" not a design build. The court found that Carvel's May 6

delivery of office plans fulfilled the "portion of the contract requiring it to design the office addition." The court also found that Carvel's failure to obtain an engineer's seal for the plant designs delivered on June 3 and its decision to impose a disclaimer on those designs constituted a failure to fulfill the plant expansion "portion of the contract." The court determined that Spencer "has shown no damages from Carvel's breach. It did not pay Carvel and simply paid someone else to do the work." The court concluded that Carvel was entitled to recover for its work on the office expansion, pursuant to either of two theories: (1) breach of a divisible contract and (2) *quantum meruit*. The court determined that pursuant to either theory, Carvel is entitled to $15,000, or sixty percent of the $25,000 contract price. The court additionally concluded that the Construction Contracts Act applies to Carvel's claim, and it awarded attorney fees, a 1%-per-month penalty, and interest. This appeal and cross-appeal followed.

## II.

[¶ 10] The court erroneously concluded that the contract between the parties is a divisible contract. "[T]he severability or entirety of a contract depends upon the intent of the contracting parties, and that intent is a question of fact" that we review for clear error. *Belanger v. Haverlock*, 537 A.2d 604, 606 (Me.1988). We will reverse a finding of fact if the record does not contain competent evidence to support it or if "it is based upon a clear misapprehension by the trial court of the meaning of the evidence." *Harmon v. Emerson*, 425 A.2d 978, 982 (Me. 1981).

[¶ 11] The court found that "[t]he actual behavior of the parties" evinced an intent to enter into a divisible contract, reasoning: "Carvel did the design in two parts, doing the office specifications first; Spencer decided to go ahead only with the plant expansion, putting off the office for another year." The parties' testimony, however, fails to demonstrate any intent to enter into a divisible contract. Steven Carvel testified that he intended to design and to construct

both parts of the expansion. Spenlinhauer testified that he intended "to get a set of design plans." None of the evidence suggests that Spencer considered hiring one contractor to perform the plant design and another contractor to perform the office design. *Cf. Belanger*, 537 A.2d at 606 (upholding determination that installment construction contract was not severable, in part because "it is unlikely that the parties would have negotiated for anything less than the complete construction of the house"). The contract requires Spencer to allocate $25,000 "for this work"; the parties did not agree to budget the plant design and the office design separately. Moreover, because Carvel and Spencer entered into the purchase order agreement in January of 1994, Spencer's decision in May of 1994 to postpone the office expansion due to *unanticipated* costs does not shed any light on what its intentions were when it contracted with Carvel. In sum, neither the contract language nor the testimony of the parties supports a finding that the parties intended to enter into a divisible contract.

## III.

 [¶ 12] We recently discussed the elements of *quantum meruit*, stating that "[a] valid claim in *quantum meruit* requires: 'that (1) services were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment.'" *Paffhausen v. Balano*, 1998 ME 47, ¶ 8, 708 A.2d 269 (quoting *Bowden v. Grindle*, 651 A.2d 347, 351 (Me.1994)). The damages in *quantum meruit* are computed according to the value of the services provided by the plaintiff. *See id.* at ¶ 7, 708 A.2d at 271.[1]

 [¶ 13] The court concluded that Carvel was entitled to recover in *quantum meruit* because "Carvel rendered the service of completing the office design work, and both parties anticipated that Carvel would be paid for such service." That conclusion is erroneous. The mechanical specifications and drawings for the office expansion that Carvel forwarded to Spencer on May 6 did not consist of the final design work of its consulting engineer. The only evidence in the record concerning the May 6 delivery indicates that the designs were twenty-five percent incomplete and thus could not be used by Spencer to solicit bids for the expansion project. Carvel did not carry its burden of establishing that the incomplete designs had any value.

 [¶ 14] Similarly, although Carvel furnished its consulting engineer's completed designs for both the office expansion and the plant expansion on June 3, those designs lacked an engineer's seal and signature. Instead, each of them bore the disclaimer stating that the drawings were only a "system concept" for a design/build project at Spencer Press. The lack of an engineer's seal and signature, by itself, would have precluded Spencer from using the designs to put the expansion project out to bid without first employing an engineer to recheck, sign, and seal them. The addition of the disclaimer, however, precluded Spencer from using the designs to solicit bids from other contractors altogether. The court specifically found that the June 3 designs had no value. Because Carvel did not establish that the services it rendered to Spencer had any fair market value, the trial court erroneously awarded Carvel recovery in *quantum meruit*.[2] Con-

1. *Quantum meruit* must be distinguished from unjust enrichment, which permits "recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay." *Aladdin Elec. Assocs. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1145 (Me.1994) (quotation omitted).

2. Moreover, Carvel's decision to print a disclaimer on all of its engineer's design work constitutes a willful breach of the contract. Carvel intended the disclaimer to prevent Spencer from using the designs to solicit bids from other mechanical contractors. Carvel's failure to perform in good faith bars it from recovering in *quantum meruit*. *See Levine v. Reynolds*, 143 Me. 15, 19, 54 A.2d 514, 517 (1947).

sequently, we need not address the cross-appeal.

The entry is:

Judgment vacated. Remanded for the entry of a judgment for the defendant.