2001 ME 98

**JENKINS, INC.**

v.

**WALSH BROTHERS, INC.**

Supreme Judicial Court of Maine.

Argued: Jan. 10, 2001.

Decided: June 29, 2001.

David P. Ray, Esq., (orally), Mary Delano, Esq., Bernstein Shur Sawyer & Nelson, Portland, for plaintiff.

Robert W. Harrington, Esq., (orally), Robert J. Harrington, Esq., Boston, MA, for defendant.

Panel: WATHEN, C.J., and CLIFFORD,* RUDMAN, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Walsh Brothers, Inc., the general contractor for the construction of a new facility at the University of New England, appeals from a judgment entered in the

---

* Although not available at oral argument, Justice Clifford participated in this opinion. *See* M.R.App. P. 12(a) (stating that a "qualified justice may participate in a decision even though not present at oral argument").

Superior Court (York County, *Brennan, J.*) following a jury-waived trial in which the court determined that Walsh was responsible to Jenkins, Inc., a drywall subcontractor, for additional payments related to the project. Jenkins cross appeals, contending that the court erred in its damage calculation and that it is entitled to additional remedies. We affirm in part and vacate and remand in part.

## I. BACKGROUND

[¶ 2] Early in 1995, Walsh was awarded the general contractor job for the construction of the Center for Health Sciences at the University of New England in Biddeford. Shortly thereafter, Jenkins submitted a bid to Walsh for the drywall portion of the project. The Jenkins bid totalled approximately $479,000,[1] and both parties understood that Walsh accepted Jenkins's proposal.

[¶ 3] Although Walsh sent a contract in the A.I.A. standard form to Jenkins, Jenkins never signed the contract. Nevertheless, Jenkins began work on the project in October 1995. The court found that the parties had in fact entered into an agreement and that Walsh had agreed to provide Jenkins with: "1) a reasonably complete design, 2) proper working conditions for drywall work, 3) proper management of the sequence of work by various trades, and 4) reasonably large and uncluttered work areas so that Jenkins could work productively."

[¶ 4] The drywall work was originally scheduled to be finished in the spring of 1996; however, difficulties due to design flaws, site excavation, and weather conditions caused the project to fall behind schedule. In an attempt to finish the project on time, Walsh altered the work schedule, and Jenkins performed services at the project that had not been contemplated in the original agreement. Because of concerns with delays, UNE agreed to use "premium pay" as compensation to accelerate the work, and Jenkins agreed to participate in the program. In addition, as changes from the original plan occurred, Jenkins submitted change orders to be authorized for reimbursement of the costs attributed to the changes.[2]

[¶ 5] The court described the ensuing events as follows:

As September approached, the great bulk of Jenkins' work had been completed. Some aspects ... remained incomplete because other trades had not yet finished the work necessary to permit the drywall work to go forward. Further, punch-lists had not been finalized. Jenkins reduced the size of its workforce on site waiting for an opportunity to finish its work. At this time the disputes giving rise to this trial came to the forefront. Jenkins claimed that it was entitled to significant payments for overtime and change order work. Walsh disputed these claims and refused further payment to Jenkins. The parties came to an impasse: Walsh decided against further payment and Jenkins ceased work on the project.

Jenkins then filed suit against Walsh and others, seeking *inter alia* recovery under theories of breach of contract (count II), quantum meruit (count III), and the Construction Contracts Statute,[3] 10 M.R.S.A.

---

**1.** The actual proposed bid was for the sum of $478,948, but the court rounded it to $479,000.

**2.** If the change order was internal, Walsh was responsible for payment. If the change order

was external, UNE was responsible for payment.

**3.** The provisions of the Construction Contracts Statute in issue here will be referred to as the prompt payment statute. *See* L.D.

§§ 1111–1118 (1997) (count IV).[4] Walsh filed a counterclaim asserting claims of unjust enrichment and promissory estoppel.

[¶ 6] After a nonjury trial, in a decision and order in anticipation of judgment, the court concluded that: "[A]lthough the parties agreed to a lump-sum contract at the outset, Walsh, although not through its fault alone, breached the contract." The breach occurred "no later than January or February, 1996" due to Walsh's failure "to comply with its contractual obligations to Jenkins concerning working conditions at the project." After the breach, the court determined that: "Walsh requested Jenkins to continue its work and Jenkins agreed. This was a quasi-contractual relationship and Jenkins is entitled to recover the fair value of the services provided, including overtime, according to industry customs." Regarding Walsh's counterclaim, the court concluded that "Jenkins substantially completed its work and would have fully completed the work had not this unfortunate dispute erupted." Thus, "Jenkins did not breach by walking off the job and Walsh's counterclaims fail because Jenkins was ready, willing and able to complete the work had Walsh not unreasonably denied any further payment to Jenkins."

[¶ 7] The court calculated the damages due Jenkins in several steps. First, it found that Jenkins was entitled to the originally agreed upon compensation in the amount of $479,000. It next concluded that Jenkins was entitled to additional labor costs attributed to premium pay and change orders. The court determined the increased cost of labor by accepting Jenkins's total claimed labor costs and subtracting from that the amount of labor the court found to have been factored into the original bid price.[5] It then reduced those remaining labor costs of $348,100, based on its determination that those costs were obtained through the application of an inflated premium pay rate. Instead of Jenkins's rate of $38 per hour, the court calculated premium pay "according to customary industry standards using 'certified payrolls'" and determined that Jenkins could "recover a maximum of 58% of the labor costs claimed above the original bid." Thus, the court found the total labor costs (beyond the contract price) to be $201,900. To this number, the court added a profit and overhead factor of 30%, or $60,600. The total of those calculations, $262,500, plus the original bid price, constituted the reasonable value of the work performed.

[¶ 8] The combined contract and quantum meruit damages totalled $741,500. From that amount the court deducted the amount that Walsh had previously paid Jenkins, as well as the amount that Walsh had paid to clear a lien filed against Jen-

---

1424 (116th Legis.1993) ("An Act to Ensure Prompt and Equitable Payment for Construction Services").

4. UNE and The Aetna Casualty & Surety Company were also named defendants but are no longer parties to this action. The court granted summary judgment in favor of UNE on Jenkins's lien claim, resolving count I of the complaint. Count V, regarding a bond issued by Aetna, was dismissed by agreement of the parties. Those counts are not before us.

5. The court determined that of the $479,000 original bid price, the labor component "was at least equal to the costs of material." At trial, Jenkins's president testified, and Jenkins's proposed findings of fact and conclusions of law indicates, that the costs for materials was approximately $203,000. Thus, the court determined that the labor costs in the original bid price were approximately $203,000.

kins, a total of $541,200, yielding an amount still due of $200,300.

[¶ 9] Next, the court concluded that Jenkins was entitled to relief pursuant to the prompt payment statute, 10 M.R.S.A. §§ 1111–1118. Pursuant to section 1118(4), and considering the factors articulated in *Poussard v. Commercial Credit Plan, Inc. of Lewiston*, 479 A.2d 881 (Me. 1984), the court awarded Jenkins attorney fees in the amount of $125,000. Finding the precise calculation of the interest and penalties to be awarded pursuant to the prompt payment statute to be complex, the court requested that the parties submit further briefs to address these issues.

[¶ 10] During the hearing on interest and penalties, the court found that Walsh violated the "spirit" of the prompt payment statute, but, because the court could not determine what had been billed or invoiced at what time, it declined to apply the stepped up interest rate required by the prompt payment statute. Instead, the court determined that the "normal pre and post judgment [interest] remedies" should be applied pursuant to 14 M.R.S.A. §§ 1602(1)(B), 1602–A(2) (Supp.2000), except that as a penalty the prejudgment interest should run from October 1, 1996, (date the court determined that Walsh had an obligation to make payment to Jenkins) rather than from the date that the complaint was served.

[¶ 11] Additionally, in accordance with section 1118(2) of the prompt payment statute, the court attached a one percent penalty per month on the $200,300 owed to Jenkins, beginning on October 1, 1996.[6] The court then entered a judgment in favor of Jenkins and denied Walsh's counterclaims.[7] Walsh filed a timely notice of appeal pursuant to M.R. Civ. P. 73 and 14 M.R.S.A. § 1851 (1980).

## II. DISCUSSION

### A. Existence of the Contract and Breach

 [¶ 12] The parties agree that they began the project pursuant to an express agreement, notwithstanding their failure to enter into a final written contract.[8] Walsh does not dispute the factual findings regarding the breach; rather, it asserts, in essence, that the parties' entire relationship was controlled by the contract because any breach on its part was not material to the contract.

 [¶ 13] "A material breach 'is a non-performance of a duty that is so material and important as to justify the injured party in regarding the whole transaction as at an end.'" *Associated Builders, Inc. v. Coggins*, 1999 ME 12, ¶ 6, 722 A.2d 1278, 1280 (quoting *Down East Energy Corp. v. RMR, Inc.*, 1997 ME 148, ¶ 10, 697 A.2d 417, 421). Whether a material breach has occurred is a question of fact that we review for clear error. *Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 9, 760 A.2d 1041, 1044. "A trial court's factu-

---

6. The penalty of one percent per month was awarded through the entry of the judgment and was calculated as follows: 46 months (October 1996—July 2000) at 1% × $200,300 = $92,138.

7. The total amount awarded to Jenkins was:

| | |
|---|---|
| Damages: | $200,300 |
| Attorney fees: | $125,000 |
| Prejudgment interest: | $ 42,808 |
| Penalties: | $ 92,138 |
| Costs: | $ 5,068.30 |

In addition, the court stated: "Jenkins shall be entitled to additional post-judgment interest and penalties of 12 percent under 14 M.R.S.A. § 1602–A and 10 M.R.S.A. § 1118(2) respectively after the entry of judgment."

8. The court did not clarify the terms of the "lump-sum contract" between the parties beyond those necessary to determine the amount due under the contract.

al finding is clearly erroneous if there is no competent evidence in the record to support it." *VanVoorhees v. Dodge,* 679 A.2d 1077, 1080 (Me.1996) (internal quotation marks omitted).

[¶ 14] The record supports the trial court's findings regarding the materiality of Walsh's breach. There was evidence that the drawings for the project were often incorrect and lacked sufficient information; the project conditions were not proper for installing drywall; and the drywall work began before there was a "tight roof" on the building. Because there is competent evidence to support the court's determination that Walsh materially breached the express agreement by failing to maintain the necessary working conditions at the project, Jenkins was justified in "regarding the whole transaction as at an end" and was not required to continue to perform pursuant to the terms of the express agreement. *See Associated Builders, Inc.,* 1999 ME 12, ¶ 6, 722 A.2d at 1280.

**B. Quantum Meruit**

[¶ 15] After finding a material breach, the court concluded that the parties "continued to work together to try to complete the project on schedule" in a quasi-contractual relationship. "Quantum meruit describes the extent of liability under a quasi-contract theory . . . ." *Forrest Assocs.,* 2000 ME 195, ¶ 11, 760 A.2d at 1045. "To sustain a claim in quantum meruit, a plaintiff must establish that '(1) services were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment.'" *Id.*

(quoting *Carvel Co. v. Spencer Press, Inc.,* 1998 ME 74, ¶ 12, 708 A.2d 1033, 1036). "Determinations concerning these factors are questions of fact and are reviewed for clear error." *Id.*

[¶ 16] The court found that "Jenkins rendered services to Walsh at Walsh's request and with its knowledge and consent under circumstances making it reasonable for Jenkins to expect payment." The record reflects that after the breach in January or February of 1996, Jenkins continued to do drywall work for Walsh, Walsh knew of the drywall work that Jenkins was performing and consented, and it was reasonable for Jenkins to expect payment for the drywall work. Thus, there is ample evidence in the record to support the court's finding regarding Jenkins's entitlement to recover in quantum meruit.

**C. Damages**

[¶ 17] The court awarded Jenkins the $479,000 agreed to when Walsh accepted Jenkins's original proposal, plus an amount representing the reasonable value of the additional services Jenkins rendered that went beyond the scope of the parties' original expectations. "The measure of recovery in quantum meruit cases is the reasonable value of the services provided." *Paffhausen v. Balano,* 1999 ME 169, ¶ 9, 740 A.2d 981, 983 (internal quotation marks omitted). Both parties challenge the court's determination of the reasonable value of the work performed after the court declared a breach of the contract.[9]

[¶ 18] An award of damages will not be disturbed "unless there is no basis in the record to support it." *Putnam v. Albee,* 1999 ME 44, ¶ 10, 726 A.2d 217, 219–20. "[R]easonableness, not mathe-

---

9. The language used by the court in awarding damages makes it appear that the court found the existence of a contract covering a substantial part of Jenkins's work but awarded all damages pursuant to a theory of quantum meruit. We find no error given that the court awarded Jenkins the amount due under the contract nonetheless.

matical certainty, is the criteria for determining whether damages were awarded appropriately." *Down East Energy Corp.,* 1997 ME 148, ¶ 7, 697 A.2d at 420. Furthermore,

> [T]he triers of facts are allowed to act upon probable and inferential as well as direct and positive proof. They are permitted to make the most intelligible and probable estimate which the nature of the case will permit, given all the facts and circumstances having relevancy to show the probable amount of damages suffered. A monetary award based on a judgmental approximation is proper, provided the evidence establishes facts from which the amount of damages may be determined to a probability.

*Id.* (citing *Merrill Trust Co. v. State,* 417 A.2d 435, 440–41 (Me.1980)).

[¶ 19] Determining the reasonable value of the work performed after the point of the breach was not an easy task. The difficulty in following the evidence presented by the parties was articulated by the court as follows: "Frankly, I have struggled to sort through the enormous volume of complex and often contradictory evidence. While perhaps unsatisfactory to all, it represents my view of a fair and reasonable result."

[¶ 20] Although Jenkins agrees with most of the court's determinations related to damages, it asserts that the court erred in one aspect of the damages determination. Specifically, Jenkins argues that the court misapprehended its method of calculating labor costs and

therefore erred in reducing the labor costs to account for its conclusion that Jenkins's numbers were inflated.

[¶ 21] Jenkins had the burden of proving the value of its services. *See id.* It therefore bore the risk of failing to provide the court with clear and concise evidence in support of its position. The evidence presented to the court was often contradictory and unclear. The court was not compelled to accept Jenkins's analysis or representations regarding its claim for premium pay or its calculation of its labor costs. *See id.* at ¶ 8, 697 A.2d at 420. The court's calculation of the reasonable value of the services provided by Jenkins, though not mathematically certain, was reasonable and supported by the record. *See id.* at ¶¶ 7–8, 697 A.2d at 420; *see also Paffhausen,* 1999 ME 169, ¶ 11, 740 A.2d at 983.

[¶ 22] Moreover, although Walsh challenges the court's findings and its reliance on the testimony of Jenkins's representatives, the record supports the findings.[10] The court acted well within the bounds of its discretion in crediting, in part, the testimony of Jenkins's representatives and in relying on that testimony in calculating the additional labor costs the court attributed to premium pay and change orders. The fact-finder "has the prerogative to selectively accept or reject testimony and to combine such testimony in any way." *State v. Ricky G.,* 2000 ME 190, ¶ 5, 760 A.2d 1065, 1067 (internal quotation marks omitted); *accord VanVoorhees,* 679 A.2d at 1080 (stating that "[t]he determination of the credibility of the wit-

---

10. Walsh also claims that the court used a total cost approach and erred in doing so. To the contrary, however, the court did not use the approach that has been disfavored by other courts. *See, e.g., Servidone Constr. Corp. v. United States,* 931 F.2d 860, 861 (Fed.Cir. 1991) ("A trial court must use the total cost method with caution and as a last resort.");

*Amp–Rite Elec. Co., Inc. v. Wheaton Sanitary Dist.,* 220 Ill.App.3d 130, 162 Ill.Dec. 659, 580 N.E.2d 622, 640 (Ill.App.Ct.1991) (finding the total cost approach "is not a preferred means of calculation"). Rather, it based its quantum meruit award on the value of the additional labor with a modest addition for overhead.

nesses is a matter solely within the province of a presiding judge acting as the finder of fact"). We do not disturb the court's award of contract and quantum meruit damages.

### D. Applicability of the Prompt Payment Statute

[¶ 23] Jenkins sought additional penalties against Walsh pursuant to the prompt payment statute, 10 M.R.S.A. §§ 1111–1120 (1997). The statute provides for penalties against owners or contractors who do not make payments to subcontractors in a timely fashion. *See* L.D. 1424, Statement of Fact (116th Legis.1993). The available remedies include prejudgment interest at an enhanced rate, a 1% monthly penalty on amounts wrongfully withheld, and attorney fees. 10 M.R.S.A. §§ 1114(4), 1118(2), 1118(4).

[¶ 24] Because the remedies provided by the prompt payment provisions are intended to augment damages that are traditionally available for contract or quantum meruit claims, it is not sufficient for the party seeking penalties to prove that work was completed and that an outstanding balance exists. Rather, in seeking penalties, the subcontractor must prove that (1) the services were performed in accordance with the agreement or un-derstanding of the parties; (2) the owner has made the progress or final payment; (3) the subcontractor has invoiced the work; and (4) the contractor failed to make payment within seven days after receipt of the invoice, or after receipt of the progress or final payment from the owner, whichever is later. *Id.* § 1114(3).[11] Penalties may not be imposed, however, on any amount withheld that "bears a reasonable relation to the value of any claim held in good faith." *Id.* § 1118(3).

#### 1. Enhanced Interest, Retainage and Monthly Assessment Penalties

[¶ 25] The court found that Walsh did not act in good faith and that Jenkins succeeded in meeting its burden on the first two elements. Specifically, the court found that Jenkins had performed the work and that UNE had made a progress payment of $170,000. The court also concluded that Walsh had violated the "spirit" of the statute when it refused to make any further payments after the dispute arose.

[¶ 26] Given the difficulty in analyzing the evidence regarding Jenkins's invoicing, however, the court did not determine exactly what amounts had been invoiced at specific times, and therefore did not determine what was due when. Rather, it found that "[w]hile disputes existed con-

---

11. **§ 1114. Contractor's and subcontractor's payment obligations**

 Payment to a subcontractor for work is subject to the following conditions.

 . . . .

 **3. Invoices.** Notwithstanding any contrary agreement, when a subcontractor or material supplier has performed in accordance with the provisions of a contract, a contractor shall pay to the subcontractor or material supplier, and each subcontractor shall in turn pay to its subcontractors or material suppliers, the full or proportional amount received for each subcontractor's work and materials based on work completed or service provided under the subcontract, 7 days after receipt of each progress or final payment or 7 days after receipt of the subcontractor's or material supplier's invoice, whichever is later.

 **4. Delayed payments.** Notwithstanding any contrary agreement, if any progress or final payment to a subcontractor or material supplier is delayed beyond the due date established in subsection 2 or 3, the contractor or subcontractor shall pay its subcontractor or material supplier interest on any unpaid balance due beginning on the next day, at an interest rate equal to that specified in Title 14, section 1602–A, subsection 2.

 10 M.R.S.A. § 1114 (1997).

cerning how much Jenkins was owed, the evidence at trial showed that a *significant portion* of Jenkins' claim was valid." (Emphasis added.) During the follow up hearing held to assist the court in determining the amount due under the prompt payment statute, the court noted its difficulty in determining how to "attach this invoice to that payment," and framed the question to counsel as follows: "how do I, when I don't attach a delinquent payment to any particular invoice, how do I know when to start counting and when to start multiplying." [12]

[¶ 27] Ultimately, although the court concluded that Jenkins was owed $200,300 in ordinary damages, it did not determine how much of that amount had been withheld in violation of the prompt payment statute.[13] Because the enhanced interest and monthly penalty remedies must be calculated with reference to the specific amounts owed and the dates by which they should have been paid, the court did not establish a baseline for calculating those remedies.[14] *See id.* §§ 1114(4), 1118(2).

[¶ 28] Notwithstanding the absence of the necessary factual findings, however, the court went on to fashion an interest remedy not contemplated by the statute, in order to assure that some penalty was imposed as a result of Walsh's violation of the "spirit" of the statute. The court awarded Jenkins the prejudgment interest penalty on the full $200,300, even though it had not determined when that amount had been invoiced. Recognizing the missing information, however, the court reduced the statutorily established penalty to the ordinary prejudgment rate but ordered that it would run, not from the date of service of the complaint, but from October 1, 1996, approximately the time of the parties' impasse.[15] It also awarded the 1% monthly penalty on the full $200,300, effective October 1, 1996. *See id.* § 1118(2).

[¶ 29] Although the court's effort to create an equitable approach to the evidentiary quagmire is understandable, it is not authorized by statute. Without a finding of the amounts due and the dates from which the penalties should run, the court

---

**12.** The difficulties in establishing what was due at a specific time are highlighted by comparing Jenkins's notice of lien in the amount of $415,609.42, as of October 29, 1996, with Jenkins's complaint, which asserted that Walsh owed it $730,518.46, and with Jenkins's argument at trial that it was owed $503,770.40.

**13.** The same lack of factual findings exists with regard to Jenkins's claim for penalties on retainage. In order to recover penalties for the contractor's failure to pay over retainage, the court must find that Jenkins proved that the retainage was in fact received by Walsh, that it was received on a date reasonably certain, and that Walsh failed to pay the amount due Jenkins from that retainage within seven days of its receipt of the funds from the owner. 10 M.R.S.A. § 1116 (1997). No such findings were made.

**14.** The delayed payment interest enhancement is calculated by applying that interest rate to "any *unpaid balance due* beginning on

*the next day* [after it is due pursuant to subsection 3]." 10 M.R.S.A. § 1114(4) (emphasis added).

The monthly penalty is assessed when it is determined that a contractor "has failed to comply with the payment terms of this chapter" and is calculated by awarding "an amount equal to 1% per month of all sums for which payment has wrongfully been withheld." 10 M.R.S.A. § 1118(2) (1997).

**15.** Prejudgment interest ordinarily begins to run on the date that the complaint is served on the defendant. 14 M.R.S.A. § 1602 (Supp. 2000) ("Prejudgment interest shall accrue from the time of notice of claim setting forth under oath the cause of action, served personally or by registered or certified mail upon the defendant until the date on which an order of judgment is entered."). In this case, the complaint was served on November 18, 1996.

could not award enhanced interest or a monthly penalty pursuant to sections 1114(4) and 1118(2). Therefore, we must vacate the court's imposition of prompt payment penalties and remand for further findings by the court to determine whether Jenkins met its burden of proof. If the court finds that Jenkins proved the amounts due and the dates from which the penalties should run, the court must award penalties in accordance with sections 1114(4) and 1118(2). If the court finds that Jenkins failed to meet its burden of proof, the court may not award any penalties under the prompt payment statute. Specifically, the portions of the judgment awarding prejudgment interest pursuant to section 1114(4) and awarding the 1% penalty pursuant to 10 M.R.S.A. § 1118(2) are vacated.

2. Attorney Fees

[¶ 30] The court also awarded Jenkins $125,000 in attorney fees. The only authority for the award of attorney fees in this matter is found in the prompt payment statute. *See id.* § 1118(4);[16] *cf. Baker v. Manter*, 2001 ME 26, ¶ 13, 765 A.2d 583, 585 ("A court's authority to award attorney fees may be determined by statute, by the American Rule at common law [which] generally prohibits taxing the losing party in litigation with a successful opponent's attorney fees, or by certain recognized common law authorizations of attorney fees.") (internal quotation marks omitted); *Linscott v. Foy*, 1998 ME 206, ¶ 17, 716 A.2d 1017, 1021 (finding that "courts should exercise the inherent authority to award attorney fees as a sanction only in the most extraordinary circumstances").

[¶ 31] The court is required to award attorney fees to the "substantially prevailing party in any proceeding to recover any payment *within the scope of this chapter.*" 10 M.R.S.A. § 1118(4) (emphasis added). The purpose of the chapter is to provide deadlines for the prompt payment of amounts invoiced in construction contract situations and to provide motivation, in the form of penalties for noncompliance, for an owner, contractor, or subcontractor to make timely payments.[17] The enactment of the chapter did not create a cause of action in contract or quantum meruit, both of which were well established in the law prior to the enactment of the prompt payment provisions. Rather, it provided disincentives to withholding amounts due to contractors and subcontractors. Thus, the "payments" authorized within the scope of the chapter are those penalties available pursuant to sections 1114, 1116, and 1118. If a party prevails on its contract or quantum meruit claims, but fails to meet its burden of establishing the additional necessary prerequisites to prove a violation of the prompt payment statute, the remedies in that chapter are not available.

[¶ 32] Although Jenkins has prevailed on its claims for breach of contract and quantum meruit, the court did not determine

---

**16.** **§ 1118. Disputes; penalties; attorney's fees**

....

4. **Attorney's fees.** Notwithstanding any contrary agreement, the substantially prevailing party in any proceeding to recover any payment within the scope of this chapter must be awarded reasonable attorney's fees in an amount to be determined by the court or arbitrator, together with expenses.

10 M.R.S.A. § 1118(4) (1997).

**17.** The Statement of Fact accompanying the bill enacting the Construction Contracts chapter referred to the need to assure "that payment obligations are met in a timely manner by all parties to a construction contract." L.D. 1424, Statement of Fact (116th Legis.1993).

whether it presented sufficient evidence to establish all of the elements necessary to prove a violation of the prompt payment statute. We cannot determine whether Jenkins is entitled to recover attorney fees because it is only entitled pursuant to section 1118(4) if the court finds, on remand, that it proved its entitlement to penalties pursuant to the prompt payment statute. If the court finds that Jenkins failed to establish a violation of the statute, Jenkins has not prevailed "within the scope of this chapter," and accordingly, the court may not award attorney fees. *Id.* § 1118(4). Thus, we also vacate and remand the award of attorney fees for further consideration by the court. In its discretion, upon remand, the court may invite further argument from counsel.

[¶ 33] Walsh's additional arguments do not merit discussion.

The entry is:

Judgment of prejudgment interest, 1% penalty, and attorney fees pursuant to 10 M.R.S.A. §§ 1114(4), 1118(2), 1118(4) vacated and remanded to the Superior Court for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.