STATE OF MAINE

LINCOLN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-067

DAVID DINEEN, d/b/a
MID-MAINE NURSERY &
LANDSCAPE CONSTRUCTION,

Plaintiff

v.

DECISION AND ORDER

NEIL WARD and
NU-TEK HOME BUILDERS and
DOUGLAS S. ROBERTS and
ELISE C. ROBERTS,

Defendants

and

FIRST NATIONAL BANK OF
DAMARISCOTTA,

Party-in-Interest

## I.     Introduction.

Pending before the court are four motions:  plaintiff's motion for attachment and

trustee process, defendant Neil Ward's motion to dismiss and for Rule 11 sanctions,

plaintiff's motion to amend complaint, and defendant Ward's motion for protective

order.

The motion for attachment was the subject of a testimonial hearing on February

9, 2005, which had been continued from the date set for same, February 8, 2005, because

of the unavailability of some of the defendants' witnesses.  Although argument had

been scheduled for February 8 on the motion to dismiss and the motion to amend, those

matters were also continued to the next day.  Because of the press of time, the

defendants did not have the opportunity to present all of their witnesses on February 9,

nor was oral argument heard on the other two motions. Nevertheless, the parties agreed that the court should decide the three motions without further testimony and without oral argument.

The motion for protective order has never been scheduled for oral argument but will nevertheless be addressed in this order as its disposition naturally follows the motions to dismiss and to amend.

The same attorney represents all defendants. The party-in-interest, First National Bank of Damariscotta, did not participate in the disputes concerning the pending motions.

## II. Motion for Attachment and Trustee Process.

At the outset of the discussion concerning this motion, it must be understood that the factual findings and conclusions concerning the applicable law expressed here are preliminary and only apply to this motion. That is, they are not binding on the parties or this court as "law of the case" because the hearing on this motion was abbreviated, especially as to any evidence the defendants may have presented. Moreover, the nature of a decision on a motion for attachment is predicative and not final. This is, the court's task is to determine whether, based on the evidence presented, the plaintiff has established "by a preponderance of the evidence that the moving party *will* succeed on its claim and in an amount equal to or greater than the amount of the attachment sought." (Emphasis supplied). *Trans Coastal Corp. v. Curtis*, 622 A.2d 1186, 1188 (Me. 1993); M.R. Civ. P. 4A(c), 4B(c).

In his motion, the plaintiff asks for attachment and trustee process on defendants Nu-Tek Home Builders and Douglas and Elise Roberts (collectively, "Robertses") in the sum of $64,829.50. Thus, it is incumbent upon him to establish by preponderance that

he will succeed in his claim against these three defendants in that sum or a greater amount.

In the court's view, the plaintiff has not succeeded in this mission because the court concludes that his version of the contractual relationship with the defendants is no more persuasive than theirs. The court also finds that the statute relied on by the plaintiff, 10 M.R.S.A. § 1115(1), does not yield the presumptive relief he requests.

The plaintiff's view of the facts is that he had a time and materials contract with Nu-Tek and the Robertses. This was because the project was larger than those he had previously had with Nu-Tek and would entail contingencies and costs that were sufficiently unpredictable that a fixed price contract was not agreed to. In his post-hearing memorandum the plaintiff, through counsel, cites a number of facts which would support this conclusion. Thus, the plaintiff submitted three invoices which contained detailed entries for hours of work performed, cost of materials and costs for use of equipment. Accordingly, it may be said, the plaintiff understood that he would be paid on such a basis and billed accordingly. It is also true that, as to the first invoice, the plaintiff was paid approximately the sum cited which would suggest that the defendants had acquiesced in this approach.

Neil Ward (Ward), Nu-Tek's principal, testified that this was a fixed price contract and that Dineen gave him a fixed bid of $50,000, "plus or minus a few bucks," a representation that was corroborated by defendant Douglas Roberts. The fact that this figure was not precise does not, in the court's view, suggest that it was not a fixed price contract as opposed to a time and materials contract. Just as with Nu-Tek's agreement with the Robertses, any fixed price contract is bound to have some margin for correction.

Ward also testified that he was concerned that he was not getting periodic progress payment bills from Dineen to pay him over time for the work contracted for. Obviously, also, if this was a time and materials contract, it would be likely that the subcontractor would bill frequently as he incurred expenses rather than submit three large detailed bills, the second of which followed the first by at least seven months.

Ward also said that his prior contracts with Dineen were fixed-price and that that circumstance suggests that this enterprise was the same as the parties' past practice.

Ward's and the Robertses' payments to Dineen were also round figures, suggesting that this was a fixed-price contract as opposed to the acceptance of the more detailed billing and payments which a time and materials contract would suggest.

Finally, Dineen testified that when he got his final check from Ward on May 13, 2004, for $20,000, Ward was "in the ball park" of being up-to-date with what Nu-Tek owed him. Because this was the day before Ward discharged Dineen, it would appear that as of May 13, 2004, Dineen accepted that Nu-Tek's "debt" to him was nearly paid. Therefore, because the amount Dineen had been paid as of that day was $47,000 and the alleged contract was for $50,000, it may be understood that the parties had, in fact, agreed to the fixed price and that Nu-Tek was "in the ball park" of satisfying its obligation of paying that sum. Even if this interpretation of these events is incorrect, certainly Nu-Tek would not have been "in the ball park" of satisfying Dineen's bill if Nu-Tek still owed him $64,829.50 on May 13 – the amount Dineen claims Nu-Tek owes him as alleged in the pending motion.

Accordingly, the court does not find Dineen's interpretation of the parties' dealings more persuasive than the defendants' and therefore cannot find that the former has met his burden of proof on this motion.

The plaintiff also argues that by virtue of the provisions of 10 M.R.S.A. § 1115(1), the defendants have waived any objections to the plaintiffs' invoices and therefore are liable to pay them in full.

The cited statute reads in pertinent part as follows:

### § 1115. Errors in documentation

1. **Invoice errors.** If an invoice is filled out incorrectly or incompletely or if there is any defect or impropriety in an invoice submitted, the owner, contractor or subcontractor must contact the person submitting the invoice in writing within 10 working days of receiving the invoice. If the contractor or subcontractor does not notify the person submitting the invoice within 10 days, the documentary errors are deemed waived.

Regrettably, the court can find no Maine case law interpreting this provision, and the parties have cited none. The plaintiff's interpretation of this statute, however, is that when a contractor fails to object to the contents of an invoice, he waives objections to it and must pay it as submitted.

In the court's view, section 1115 must be viewed in the context of the chapter in which it is found. That chapter, 201-A of Title 10, is sometimes called the "prompt payment statute" and establishes obligations for contractors to pay subcontractors on a timely basis. There one learns that a contractor is to pay his subcontractor 7 days after receipt of his invoice. 10 M.R.S.A. § 1114(3). The failure to do so results in the imposition of the statutorily enhanced rate of interest, 10 M.R.S.A. § 1114(4), or, of course, a lawsuit such as this.

Section 1115 adds to this scheme of remedies only in that when and if a contractor does not notify a subcontractor of documentary errors in an invoice, he thereby waives those errors. In the court's view, that does not mean that the contractor is then liable to pay those invoices because he has waived objection to them. Instead, it means that the contractor cannot use documentary errors to justify late payment or

generate delay in meeting his statutory obligation to pay his subcontractor promptly as section 1114 provides.

Once the contractor fails or refuses to pay on a timely basis, the subcontractor can, as has this plaintiff, bring a cause of action against the contractor for failure to make timely payment under the statute. Section 1115, however, as noted infra, does not work as a waiver by the contractor to the subcontractor's claims if the latter fails to object to defects in the invoices. The plaintiff subcontractor must still prove his case including the requirement that he provided services in accordance with the parties' contract and the contractor failed to pay as section 1114 dictates. *Jenkins, Inc. v. Walsh Brothers, Inc.,* 2001 ME 98, ¶ 24, 776 A.2d 1229, 1237.

Were the court to interpret section 1115 as the plaintiff proposes, it would mean that a contractor would be liable to pay invoices if he did not object to them in 10 days, irrespective of what those invoices may contain or the amounts they demand. Surely the legislature could not have intended to impose liability for any sum demanded upon the passage of such a brief period of time beyond a billing date. Rather, as this court here concludes and as *Jenkins, Inc. v. Walsh Brothers, Inc., id.,* teaches, section 1115 only serves to eliminate a basis for a contractor's procrastination in responding to invoices while a plaintiff subcontractor must still affirmatively prove his case.

From all this, then, the court finds that the plaintiff has not established by a preponderance of the evidence that he will succeed on his claims and recover judgment in the amount sought either by virtue of the evidence presented or as a result of the operation of the statute on which he relies, 10 M.R.S.A. § 1115. This conclusion also applies to the plaintiff's *quantum meruit* claim as to which he presented no evidence at the hearing. Moreover, because the court does not find that, at this stage of the

proceedings, the plaintiff will prevail on his complaint, there is no need to address his request that the court pierce the corporate veil and attach Ward's personal assets.

For all these reasons, the motion for attachment and trustee process is to be denied.

### III. Plaintiff's Motion to Amend and Defendant Ward's Motion to Dismiss and for Rule 11 Sanctions.

Because these two motions are related, they will be considered together. That is, defendant Ward seeks to have the complaint dismissed against him because the plaintiff's expressed grievances are with Nu-Tek Home Builders, Inc. and the pleading fails to state a claim against him individually or name him as a party.

Ward also asks that Rule 11 sanctions be imposed on the plaintiff because he knew that Ward, as an officer of a corporation, could not be held liable for the corporation's debts and therefore should not have named him in the caption of the complaint. Moreover, Ward says, the plaintiffs had previously brought a similar complaint against Nu-Tek which was dismissed because it was brought in the wrong venue, showing an inattention to the proper filing of a complaint.

In an apparent effort to address Ward's objections to the complaint, the plaintiff has asked to amend it to allege facts which may impose liability on Ward. Those "facts" are that Ward held himself out as doing business as Nu-Tek Home Builders, that he did not advise Dineen that Nu-Tek was a corporation, that the corporation does not have sufficient assets to pay the plaintiff if he succeeds in obtaining a judgment, and that Ward has intermingled his personal funds, assets and liabilities with those of the corporation. *See* Amended Complaint ¶¶ 7-10.

Addressing the second motion first, M.R. Civ. P. 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." This mandate

means that "if the moving party is not acting in bad faith or for delay, the motion will be granted in the absence of undue prejudice." *Chrysler Credit Corp. v. L/A Auto Sales,* 1998 ME 49, ¶ 15, 707 A.2d 1309, 1315 (citation omitted).

Thus, it appears that Dineen should be permitted to amend his complaint to allege facts which may serve to pierce the corporate veil and impose liability on Ward personally unless Ward can show bad faith or delay motivated the plaintiff's effort to amend his complaint or that undue prejudice would result from the amendment.

Ward, however, correctly alleges that Dineen had a basis to know that Nu-Tek was a corporation when he filed his first complaint and therefore should not have named Ward as a party because he cannot be held personally liable for his corporation's debts. Further, Ward says, that without allegations of fraud or misrepresentation in the text of the amended complaint, there is no proper basis alleged to pierce the corporate veil and impose liability on Ward.

In response to the motion to dismiss, Dineen says he was at first unsure of Nu-Tek's corporate status and was unable to find any entries for Nu-Tek via a search of the Secretary of State's corporate services website so therefore believed it was appropriate to also name Ward as a defendant as Nu-Tek might be an unincorporated entity for which Ward was the principal.

While Ward points to the history of the first case to show that Dineen knew, or should have known, that Nu-Tek was a corporation because he identified Nu-Tek as such in that case, the question to be addressed is whether Dineen can now name Ward as well as the corporation as a defendant and whether Dineen should be penalized for his less than careful approach to drafting his complaints with the case dismissed as to Ward.

In the court's view, the plaintiff ought to be permitted to amend his complaint because Rule 15(a) favors this result and Ward cannot show that the amendment is offered in bad faith, to delay the case or that he is prejudiced by its approval.

While it may be true that Dineen's counsel should have exercised greater care in the drafting of the complaint, once he became satisfied that Nu-Tek was in fact a corporation, he took the appropriate procedural step to add Ward as an additional party. In the court's view, the original misstep and its correction do not amount to bad faith or cause prejudice to the defendants.

Moreover, it is not inappropriate to name both the corporation and its principal as parties if their adversary, the plaintiff, believes the corporate form has been abused or its existence has been misrepresented. Also, while it is true that the plaintiff must prove the two elements necessary to pierce the corporate veil, *see Johnson v. Exclusive Properties Unlimited*, 1998 ME 244, ¶ 6, 720 A.2d 568, 571, there is no law in Maine that requires that those two elements be specifically pled in the complaint. Nor, as the defendant argues, does Maine law require that a plaintiff allege fraud or misrepresentation in his complaint before he may endeavor to pierce the corporate veil. That being so, the court must not dismiss the complaint or the amended complaint or deny the plaintiff the opportunity to amend his original complaint because of these alleged errors in pleading.

In sum, the plaintiff will be permitted to amend the complaint because the cited rule requires that this procedural step be liberally granted and there has been no showing of bad faith, delay or undue prejudice. Second, neither the complaint nor the amended complaint are to be dismissed because they did not name the proper defendants. Ward, subject to proof that the corporate veil may be pierced, is a proper

party as is the corporation, either one of whom may ultimately be held liable on the counts in the complaint which relate to them.

Finally, as noted, supra, while it is true that the plaintiff could have exercised greater care in the drafting of the first complaint because he knew or should have known the relationship of Ward to his corporation, that failure is not so serious that Rule 11 sanctions ought to be imposed. As the court has here found, subject to the plaintiff's proof of same, the corporate veil may be pierced so that Ward may be held liable. Accordingly, it was not a violation of Rule 11 to name him as a party.

For all these reasons then, the motion to amend is to be granted and the motion to dismiss is to be denied.

## IV. Defendant Ward's Motion for Protective Order.

By its terms, this motion was filed seeking an order protecting Ward from the discovery process until the court ruled on the motion to dismiss. Because that motion is to be denied, and the motion to amend is to be granted so that Ward will be a party in this case, this motion must be denied as there is no basis to protect Ward from the discovery process.

## V. Conclusion.

Based on the foregoing, the clerk is DIRECTED to make the following entries:

(1) Plaintiff's Motion for Attachment and Trustee Process is DENIED.
(2) Defendant Ward's Motion to Dismiss and for Rule 11 Sanctions is DENIED.
(3) Plaintiff's Motion to Amend is GRANTED as prayed for.
(4) Defendant Ward's Motion for Protective Order is DENIED.

Dated: March 14, 2005

John R. Atwood
Justice, Superior Court

**For Plaintiffs:**
**John R. Lemieux, Esquire**

**For Defendants:**
**Robert J. Rubin, Esquire**