STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO. CV-08-512

W.G. AMBROSE ENTERPRISES
AND WILLIAM G. AMBROSE,

    Plaintiffs


v.                                      DECISION AND ORDER


WILLIAM P. KEEFE,

    Defendant


This matter came before the court for trial on September 10, 2009 on a complaint alleging default on a promissory note. Keefe alleges that he was in substantial compliance and it was Ambrose that breached the parties' agreement.

## FACTUAL BACKGROUND

On May 1, 2003, William Ambrose sold Bradco Chair Company to the William Daniel Corporation, William P. Keefe and his then business partner Daniel P. Chasse. The William Daniel Corporation signed a Promissory Note, dated May 1, 2003, in favor of W.G. Enterprises, Inc. in the original amount of $454,361.00. The Note provides for interest at 6% per annum and also provides that for reasonable attorney's fees and court costs to the prevailing party in any litigation connected with the Note. Also on May 1, 2003, Keefe and Chasse each also personally guaranteed 60% of the Note. On April 14, 2004, in a Release Agreement, Ambrose released Chasse from his personal liability and the William Daniel Corporation and Keefe reaffirmed the Note and Keefe became the sole guarantor of the Note by assuming any and all obligations of Chasse under the

Chasse guaranty. On April 11, 2005, the William Daniel Corporation made its last payment due on the Note, thus defaulting on the Note and triggering Keefe's guaranties. Keefe failed to make any payments on the Note after April 11, 2005.

In connection with the sale of Bradco Chair, on May 1, 2003, the William Daniel Corporation leased from Ambrose, the commercial real estate located at 102 Lisbon Street, Lisbon, Maine. The Lease provided that the William Daniel Corporation was to pay rent in the amount of $3,000 per month with a 15-day grace period after written notice for any default. See ¶¶ 3, 17(a)(i) of Lease Agreement. The Lease also required the corporation to pay the real estate taxes on the property within 15 days of receiving the real estate tax bill. See ¶ 28(a) of the Lease Agreement. Real estate taxes on the property became due on September 15, 2003, March 15, 2004, September 15, 2004, March 15, 2005 and September 15, 2005, and the corporation received these tax bills prior to the due dates. The corporation did not pay the property tax bill due on September 15, 2005.

On May 19, 2005, Ambrose entered into a Settlement Agreement with the William Daniel Corporation and Keefe. The Settlement Agreement required the William Daniel Corporation pay $3,000 per month for rent, payable on "the first day of each month" until the first of the following events occur, (a) the corporation or substantially all of its assets are sold, or (b) all of the corporation's liquid assets are liquidated. The Settlement Agreement also required the corporation secure casualty insurance for the premises and pay all taxes on the property, including any interest, penalties or lien fees by the earlier of December 31, 2005 or the date the corporation vacates the premises. The Settlement Agreement provided that if corporation defaulted on its obligations under

2

the Settlement Agreement, the release of Keefe, executed at the time of the Settlement Agreement but held in escrow, would become null and void.

The corporation defaulted on its obligation to pay rent on the first of each month and to pay the property taxes. The corporation failed to pay rent on November 1, 2005 and again on December 1, 2005. Ambrose finally accepted payment of $3,000 from Keefe on or about November 15, 2005. The corporation failed to pay the September 15, 2005 property taxes before it vacated the premises sometime in early to mid-December.[1] Ambrose finally paid $4,848 for the overdue property taxes in December 2005 and Keefe never reimbursed Ambrose for these property taxes.

The William Daniel Corporation ceased to do business without paying the Note and without paying amounts due under the Lease. Following the corporation's vacating the leased premises, Ambrose incurred approximately $10,000 to remove hazardous waste, unsold equipment, and to clean up the property, notwithstanding the fact that the lease required the premises to be left in good order, repair and condition.[2]

On January 8, 2006, Ambrose gave written notice to Keefe that he failed to comply with the Settlement Agreement and was therefore responsible, as the sole guarantor, for payment of the Note, which remained in default. On or about August 13, 2006, Ambrose gave written notice to the William Daniel Corporation that the Note remains in default. Despite the demand, Keefe has not made payments under the Note.

---

[1] On or about November 29 and 30, 2005, BankNorth, another creditor of the William Daniel Corporation and defendant, conducted a secured party auction, selling substantially all of the assets of the William Daniel Corporation. For at least a week or so after the auction, equipment remained at the property and buyers were picking up their auction purchases at the property. The William Daniel Corporation is now dissolved.

[2] The complaint does not seek compensation for these clean-up expenses.

3

DISCUSSION

Keefe contends that the Settlement Agreement was an amendment of the Lease and, according to the Lease, he was not in default when on November 9, 2005, he offered to make payment of the rent due on November 1, 2005. Under paragraph 17 (a)(i) of the Lease, there was a 15-day grace period. The Settlement Agreement did not provide a grace period. Keefe also argues that Ambrose breached the Settlement Agreement when he failed and refused to accept the November rental payment on November 9.[3] Ambrose counters that the Settlement Agreement became the operative document and when Keefe breached the Settlement Agreement, the release of the Keefe guaranties became void and Keefe became fully liable under his guaranties of the Note.

The court concludes that the controlling document between the parties for determination of the parties' obligations regarding the lease of the premises is the Settlement Agreement. Paragraph 7 of the Settlement Agreement explicitly provides as follows: "This agreement is the entire understanding and agreement of the parties regarding its subject matter, and supersedes any prior oral and written agreements, representations, understandings and discussions between the parties. No other understanding between the parties shall be binding on them unless set forth in writing and signed by both parties." Under paragraph 7, the Settlement Agreement replaced any prior agreements of the parties concerning the lease of the premises. The provisions of the lease did not apply under the Settlement Agreement unless the Settlement Agreement expressly incorporated the provisions of the Lease Agreement as the Settlement Agreement did in paragraph 2 when it adopted the Lease Agreement's description of the

---

[3] Ambrose testified that he did not refuse to take payment on November 9; however, the court need not resolve this factual dispute as the court bases its decision on other factors.

4

leased premises. However, the Settlement Agreement did not incorporate the payment terms of the Lease Agreement and the Settlement Agreement did not contain a grace period for the payment of rent.

The Settlement Agreement contained three obligations, (1) payment of rent "on the first day of each month", (2) securing a casualty insurance policy, and (3) payment of the property taxes on or before the earlier of December 31, 2005 or the date the corporation vacates the leased premises. Although the agreement does not contain the language that time was of the essence, the plaintiff is nevertheless entitled to strict performance of the agreement. Time was of the essence because the agreement specified that payments were to be made by "the first day of each month". See *Raison Memorial Trust v. Casey*, 2008 ME 63, ¶ 21, 945 A. 2d 1211, 1212.[4] Defendant's failure to pay rent and property taxes constitutes a material breach of the Settlement Agreement. Whether a material breach has occurred is a question of fact. See *Jenkins, Inc. v. Walsh Bros., Inc.*, 2001 ME 98, ¶13, 776 A. 2d 1229, 1234. Here, the facts are that the corporation had three key obligations under the Settlement Agreement and that it failed to meet two of its three obligations.

The Settlement Agreement also provided that if a party defaults on any of its obligations under the Settlement Agreement, the release of that party became null and void. The corporation defaulted when it failed to pay November and December 2005 rent

---

[4] The Court in *Rasin*, stated:
"In short, whether time is of the essence in a contract is a matter of fact, and cannot be determined simply by the presence or absence of these magic words in the contract. In the past, we have looked to the nature, circumstances, and purpose of the contract to determine whether time is of the essence." Id. ¶ 21 (citations omitted). In the instant case, defendants were in default and Ambrose wanted rent and taxes to be paid until defendant vacated the premises and Ambrose could lease the property to mitigate its losses caused by defendants' breach.

on the first day of each month and when it failed to pay the property taxes before it vacated the leased premises. Thus, the release of Keefe executed by Ambrose at the time of the Settlement Agreement became null and void and Keefe became liable under his personal guaranties. The court rejects Keefe's argument that he is excused from performance under the Settlement Agreement because Ambrose breached the agreement first. Ambrose had performed all its obligations under the Settlement Agreement and Ambrose never repudiated the agreement. Accordingly, Keefe is personally liable on the Note and for the unpaid rent and property taxes.

The entry is:

Judgment to the Plaintiffs on the Note in the amount of $456,347.58 together with interest at the annual rate of 6%, attorney's fees and costs, and on the Settlement Agreement in the amounts of $3,000 in rent and $4,848 in property taxes,.

September 23, 2009

Joyce A. Wheeler, Justice

= COURTS
nd County
ox 287
ie 04112-0287

SONIA BUCK ESQ
LINNELL CHOATE & WEBBER
PO BOX 190
AUBURN ME 04212-0190

= COURTS
nd County
ox 287
ie 04112-0287

WILLIAM KEEFE ESQ
62 SISQUISIC TRAIL
YARMOUTH ME 04096