STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-02-225
DHM - KEN - 11/19/03

VAUGHAN STEVENS III, and
QUALITY TESTING DESIGNS, INC.,

Plaintiffs

v.

MARRINER, INC., *et al.,*

Defendants

DECISION AND ORDER
DONALD L. GARBRECHT
LAW LIBRARY

DEC 12 2003

This matter is before the court on defendants' motion for summary judgment.

This case concerns circumstances surrounding an alleged agreement by a paving business to purchase an industrial testing business, including its assets, and to employ its owner and an employee. In conjunction therewith, there existed discussions of a noncompete agreement.

Beginning in the spring of 2002, Vaughan Stevens, the owner of Quality Testing Designs ("QTD") began negotiating with Marriner, Inc., a paving company owned by Linda, Jeffrey and Michael Marriner. QTD had provided testing services to Marriner, Inc. over the years and hoped to sell its company to the Marriners and be employed by them, along with William Crosby, one of his employees. QTD and plaintiff personally were in financial difficulty.

In late March of 2002, plaintiff Stevens contacted defendant Jeffrey Marriner about the sale of QTD. Some time in very early April, plaintiff and defendant Jeffrey Marriner met again. A second meeting took place on April 5, 2002 in Jeffrey Marriner's office in Rockport during which Jeffrey's sister Linda and brother Michael joined them. At this meeting the parties discussed the idea of plaintiff coming to work for Marriner

Inc. immediately at a salary. (Plaintiff disputes only that $45,000 was a maximum figure). There is a great deal of disagreement over the details of the conversation and the meanings of the negotiations on April 5, 2002. Plaintiff maintains that the meeting concerned buying his company and hiring him and that no discussion of his financial situation occurred. Defendant avers that plaintiff went into great detail about his financial problems at the April 5, 2002 meeting and "indicated that he wanted to receive $150,000 from defendants to close down his business and come to work for them." Both sides admit that the issue of a noncompete agreement arose at the April 5, 2002 meeting.

Some time after the April 5, 2002 meeting, plaintiff asked his attorney to memorialize the oral agreements reached at that meeting. Plaintiffs' attorney and defendants' attorney began communications regarding memorializing the proposed transaction. On May 16, 2002, Jeffrey Marriner and plaintiff Stevens signed a written agreement advancing $20,000 to plaintiff in anticipation of a formal agreement to purchase QTD.[1] A "first draft agreement" dated June 27, 2002 followed. This draft stated that the purchase price would be $150,000 and discussed possible ways to structure payment. A number of letters were exchanged between the two attorneys but no further draft agreements resulted. A growing concern among the Marriners over encumbrances (secured loans, IRS liens, etc.) on equipment owned by QTD, and plaintiff's frustration at not having been paid for his equipment, company and labor led to a meeting on August 16, 2002,[2] at which no attorneys were present.[3] After this meeting, plaintiff conferred with his attorney, and, as a result, took his equipment and left the employ of Marriner, Inc.

---

[1] According to defendants' statement of material fact (which endeavors to reproduce part of the letter) the $20,000 was an advance "toward our discussion currently being negotiated into a written statement."

[2] This meeting is sometimes referenced as having taken place on the 15th.

[3] As in many other matters, the parties disagree as to why no attorneys were present.

On October 25, 2002, plaintiff filed a complaint in 13 counts against Marriners, Inc. and the three owners individually in this court alleging breach of contract, fraud, unjust enrichment and seeking damages, attorney's fees, quantum meruit and specific performance. On October 17, 2002,[4] defendant Marriner, Inc. and the Marriner siblings filed an answer, counterclaims and affirmative defenses.

Summary judgment is proper if the citations to the record found in the parties' Rule 56(h) statements demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Dickinson v. Clark*, 2001 ME 49, ¶ 4, 767 A.2d 303, 305. "A fact is material if it has the potential to affect the outcome of the case under governing law." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, n.3, 770 A.2d 653, 655, n.3 (citing *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575). "The invocation of the summary judgment procedure does not permit the court to decide an issue of fact, but only to determine whether a genuine issue of fact exists. The Court cannot decide an issue of fact no matter how improbable seem the opposing party's chances of prevailing at trial." *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 6, 695 A.2d 1206, 1209 (quoting *Tallwood Land & Dev. Co. v. Botka*, 352 A.2d 753, 755 (Me. 1976)). To avoid a judgment as a matter of law for a defendant, a plaintiff must establish a prima facie case for each element of her cause of action. *See Fleming v. Gardner*, 658 A.2d 1074, 1076 (Me. 1995).

Defendants assert that there was never a binding agreement between any of the defendants and the plaintiff regarding the sale of QTD and related matters. Defendants further assert that plaintiff held back critical financial information thereby undermining negotiations. As to their counterclaim, defendants argue that plaintiff is contractually obligated to repay the $20,000 advanced to him pursuant to the only writing signed by

---

[4] The complaint and the summons are dated September 30, 2002.

the parties (letter of May 16, 2002). Plaintiff maintains that there was a contract and that contract was based on the agreement reached by the parties on April 5, 2002. He also maintains that he disclosed all relevant financial information to defendants and worked for them from April 8, 2003 until late August for no pay.

The complaint consists of 13 counts, but only the first five state causes of action (the remainder names parties individually and jointly for procedural purposes); breach of contract, specific performance, *quantum meruit*, unjust enrichment and fraud.

Defendants assert that while there were negotiations, there was never a meeting of the minds sufficient to create a contract under Maine law. See, *Pepperell Trust Co. v. Mountain Air Financial Corp.*, 1998 ME 46, ¶13, 708 A.2d 651, 655.

> To establish a legally binding agreement between parties, the mutual assent to be bound by all of its material terms must be reflected and manifested either expressly or impliedly in the contract and the contract must be sufficiently definite to enable a court to determine its exact meaning and fix any legal liability of the parties.

*June Roberts Agency, Inc. v. Venture Properties, Inc.*, 676 A.2d 46, 48 (Me. 1996).

Plaintiff points to the discussion of $150,000 payment and an exclusive work agreement during the April 5, 2002 meeting. Defendants reply that this meeting, which produced no documentation, was essentially a discussion of ideas relating to a working relationship with QTD and plaintiff. Defendant points to the May 16, 2002 letter as proof that an oral agreement did not precede it (citing the language about advancing funds "toward our discussion currently being negotiated"). This letter makes it clear that there were still terms to be finalized and both parties seemed to want a written memorialization.

Plaintiff argues that from QTD's perspective "this is a contract for the sale of goods" and should be governed by the UCC wherein a term can be left out entirely and

the contract may still be enforceable. Obviously this is also a services contract as plaintiff was being offered $45,000 per year to work.

The $20,000 payment from the Marriners to plaintiff, noted in the May 16, 2002 letter, is portrayed as an "advance" by defendant, and plaintiff agrees. Whether an advance on the purchase of equipment or for labor to be performed, the payment seems to evidence an underlying agreement. However, on the facts provided the court, there does not seem to exist sufficient facts arising out of the April 5, 2002 meeting for the court to conclude that a contract was entered into awaiting written form. More likely, it was an agreement by the parties to reach an agreement and enter a contract. In part, the direct relationship of a noncompete agreement with an exclusive employment contract and the lack of sufficient terms to protect the assets and claims of creditors would preclude finality in a meeting of the minds. Certainly, those items alone provide the basis for the need for negotiations to continue. For these reasons, the defendants' motion for summary judgment on the breach of contract claim must be granted.

As to the count of specific performance, because plaintiff has secured work with a third-party paving company, he maintains that "events have made this remedy impractical and plaintiffs abandon it."[5]

In the *quantum meruit* count, plaintiff is seeking judgment for the value of the services he and QTD provided to defendant above and beyond the $20,000 payment noted in the May 16, 2002 letter.

The Law Court described a quasi contract equitable claim of *quantum meruit* in its ruling in *Forrest Associates. v. Passamaquoddy Tribe*, 2000 ME 195, 760 A.2d 1041 so:

> Quantum meruit describes the extent of liability under a quasi-contract theory and therefore involves the "recovery for services or materials provided under an implied contract." *Bowden v. Grindle*, 651 A.2d 347, 350

---

[5] Plaintiff's memorandum in opposition at page 13.

(Me. 1994) (quoting *Aladdin Elec. Assocs. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1145 (Me. 1994)). To sustain a claim in quantum meruit, a plaintiff must establish that "(1) services were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment." *Carvel Co. v. Spencer Press, Inc.*, 1998 ME 74, P12, 708 A.2d 1033, 1036.

*Forrest Associates* at ¶13, 1045.

Addressing only the wage claim of plaintiff's complaint, defendant asserts that plaintiff was paid in full for his employment services. Plaintiff argues that what he supplied defendant was more than wage labor and included the assets of QTD. Plaintiff also maintains that he was not paid for his last three days of work. Like the contract claim above, this claim is very fact specific and the parties are far apart on the facts. Plaintiff's averments, if taken as true, would show that plaintiff rendered services and other valuables that defendant consented to receive and that it was reasonable for the plaintiff to expect payment. For this reason, the defendants' motion for summary judgment on the *quantum meruit* claim must be denied.

"When one party unjustly benefits from labor and materials rendered by another with the expectation of payment, the law may impose a promise on the part of the recipient to pay the value of the benefit conferred." *A.F.A.B., Inc. v. Town of Old Orchard Beach*, 639 A.2d 103, 105 (Me. 1994). Plaintiff brought this claim as an alternate avenue of recovery should this court find no valid contractual relationship existed. As the Law Court noted in *A.F.A.B., Inc.*:

> Although the terms "unjust enrichment" and "quantum meruit" are often used synonymously, the distinction between them is legally significant. Quantum meruit denotes recovery for the value of services or materials provided under an actual, implied-in-fact contract. *Martin v. Campanaro*, 156 F.2d 127, 130-31 n.3 (2d Cir. 1946). Unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay. Id.; *Saunders v.*

*Saunders,* 90 Me. 284, 289, 38 A. 172 (1897); 66 Am. Jur. 2d Restitution and Implied Contracts § 166 (1973).

*A.F.A.B., Inc. v. Town of Old Orchard Beach,* 639 A.2d 103, 105 (Me. 1994).

Defendant flatly states that plaintiffs Stevens and QTD "do not claim that they have provided any goods or services for which they were not compensated." Plaintiff, however, as noted above in the *quantum meruit* claim maintains that non-payment for certain benefits and services is exactly what happened. Plaintiff's averments taken as true must deny support summary judgment for defendant for the same reasons as those stated in the *quantum meruit* claim.

Plaintiff seeks recovery from the defendant on the basis of fraud:

A defendant is liable for fraud or deceit if he (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to [her] damage. . . . Reliance is unjustified only if the plaintiff knows the representation is false or its falsity is obvious to [her].

*Francis v. Stinson,* 760 A.2d 209, 217 (Me. 2000); quoting *Letellier v. Small,* 400 A.2d 371, 376 (Me. 1979).

Plaintiff maintains that defendant Jeffrey Marriner told him that Marriner, Inc. had set aside $150,000 for the purchase of QTD. Plaintiff maintains that he was told that this money, waiting in the bank, would be available to pay his creditors once a non-compete clause was signed. He also maintains that he brought $70,000 worth of equipment with him to work for Marriner, Inc. on the basis of repeated statements by defendants that they had an agreement. Defendant asserts that not only does plaintiff lack a cause of action for fraud, but plaintiff, through counsel, has changed the basis for the fraud claim without amending the complaint

While there may be some difference in emphasis arguing in support, and certainly the plaintiff's affidavit of June 5, 2003 postdates the complaint and is not referenced in it, the basic elements of the claim and the support for it have remained the same. Plaintiff avers that he was promised $150,000 by the defendants to induce him to act. This averment is consistent with plaintiff's averments in opposition to summary judgment. Again, in this very fact specific case, the parties are far apart on the facts, especially the facts related to what occurred in the meeting of April 5, 2002. However, considering the information in a light most favorable to the plaintiff, he seeks to establish the elements of fraud on the basis that the defendant would pay him to purchase his business, give him employment and, because they had the negotiated price means available, were able to execute its terms. There is no evidence that these defendants did not have the means to meet the financial terms of the contract or that they knew any representations were false or in reckless disregard of whether they were false. Further, while plaintiff may have justifiably relied upon the representation of the defendant's intent to enter into the contract, plaintiff entered into an employment circumstance based upon negotiations appearing to be made in good faith and buttressed by a $20,000 advance. This court is not satisfied that there exists *prima facie* evidence of fraud on the part of the defendants.

There is a great deal of factual dispute over the status of negotiations at the time of the $20,000 "deposit" paid in connection with negotiations for the purchase of QTD. These factual uncertainties preclude the award of summary judgment for the defendant on their counterclaim.

Defendant maintains that because plaintiff has retrieved all of his equipment and obtained another job and retained his "deposit" he can show no damages. Of course, plaintiff has alleged damages beyond his loss of employment and not that he had

permanently lost his equipment. He alleges damages both for loss of the bargain and consequential damages resulting from breach of contract. While the breach of contract claim does not survive, the issue of plaintiff's damages under the remaining counts is subject to genuine issues of material fact.

Defendant seeks to have the three Marriner siblings released as individual defendants in this case because "[a]ccording to Stevens, the transaction would have involved QTD selling assets to Marriners." Plaintiff argues that because there may be an element of fraud in this case, the corporate officers (the siblings) may be liable under the holding of a 1991 Law Court case finding that it was not irrational for a jury to find a corporation liable but not find its sole shareholder and chief executive officer liable. *Frost v. Drew*, 586 A.2d 1242, 1243 (Me. 1991).

There is scant case law in Maine on the topic of "piercing the corporate veil" and what there is does not favor plaintiff. It is well established that "corporations are separate legal entities with limited liability." *Anderson v. Kennebec River Pulp & Paper Co.*, 433 A.2d 752, 756 n.5 (Me. 1981). "[B]efore a court may pierce the corporate veil, a plaintiff must establish that: (1) the defendant abused the privilege of a separate corporate identity; and (2) an unjust or inequitable result would occur if the court recognized the separate corporate existence." *Johnson v. Exclusive Props. Unlimited*, 1998 ME 244, ¶1, 720 A.2d 568, 570. Inasmuch as the court is removing the fraud claim as an element of this case, the individual defendants must be dismissed and summary judgment must be awarded.

Defendant points out that under Maine law, punitive damages are not available for breach of contract, *Drinkwater v. Patten Realty Corp.*, 563 A.2d 772, 776 (Me. 1989). In addition, under Maine law, actual malice is required to support punitive damages. See, *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985). While the breach of contract claim is

not before us, we are left with allegations of failing to meet commitments and understandings and even inducing detrimental reliance, but nothing approaching actual malice has been alleged. Therefore, defendant must receive summary judgment on the punitive damages claim.

The entry will be:

Defendant's motion for summary judgment on count I of plaintiff's complaint is GRANTED; judgment for defendant on count I, breach of contract; count II of plaintiff's complaint, specific performance, is WITHDRAWN by plaintiff; defendant's motion for summary judgment on count III of plaintiff's complaint, *quantum meruit*, is DENIED; defendants' motion on count IV of plaintiff's complaint, unjust enrichment, is DENIED; defendants' motion for summary judgment on count V of plaintiff's complaint, fraud, is GRANTED; judgment for the defendant on count V of plaintiff's complaint; defendant's motion for summary judgment on counts VI, VII, VIII and IX, punitive damages, is GRANTED; judgment for defendant on counts VI, VII, VIII and IX of plaintiff's complaint; defendant's motion for summary judgment on counts X, XI and XII is GRANTED; judgment for the defendants Jeffrey Marriner, Linda Durrell, and Michael Marriner on counts X, XI and XII of plaintiff's complaint; defendants' motion for summary judgment on its counterclaim is DENIED.

Dated: November____19____, 2003

Donald H. Marden
Justice, Superior Court

VAUGHN STEVENS III - PLAINTIFF
24 CONY RD
AUGUSTA ME 04330
Attorney for: VAUGHN STEVENS III
JAMES E MITCHELL
MITCHELL & DAVIS
86 WINTHROP STREET
AUGUSTA ME 04330

Attorney for: VAUGHN STEVENS III
JOHN S BOBROWIECKI JR
FARRIS HESELTON LADD & BOBROWIECKI, PA
251 WATER STREET
PO BOX 120
GARDINER ME 04345-0120

QUALITY TESTING AND DESIGN INC - PLAINTIFF

Attorney for: QUALITY TESTING AND DESIGN INC
JAMES E MITCHELL
MITCHELL & DAVIS
86 WINTHROP STREET
AUGUSTA ME 04330

Attorney for: QUALITY TESTING AND DESIGN INC
JOHN S BOBROWIECKI JR
FARRIS HESELTON LADD & BOBROWIECKI, PA
251 WATER STREET
PO BOX 120
GARDINER ME 04345-0120


vs
MARRINER INC - DEFENDANT
CAMDEN STREET
ROCKPORT ME 04856
Attorney for: MARRINER INC
DAVID PERKINS
PERKINS OLSON  PA
30 MILK STREET
PO BOX 449
PORTLAND ME 04112-0449

JEFFREY A MARRINER  - DEFENDANT
CAMDEN STREET
ROCKPORT ME 04856
Attorney for: JEFFREY A MARRINER
DAVID PERKINS
PERKINS OLSON  PA
30 MILK STREET
PO BOX 449
PORTLAND ME 04112-0449

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CV-2002-00225


**DOCKET RECORD**

Printed on: 11/19/2003

LINDA DURRELL  - DEFENDANT
CAMDEN STREET
ROCKPORT ME 04856
Attorney for: LINDA DURRELL
DAVID PERKINS
PERKINS OLSON  PA
30 MILK STREET
PO BOX 449
PORTLAND ME 04112-0449

MICHAEL MARRINER  - DEFENDANT
CAMDEN STREET
ROCKPORT ME 04856
Attorney for: MICHAEL MARRINER
DAVID PERKINS
PERKINS OLSON  PA
30 MILK STREET
PO BOX 449
PORTLAND ME 04112-0449


Filing Document: COMPLAINT                    Minor Case Type: CONTRACT
Filing Date: 10/25/2002

## Docket Events:

10/29/2002 FILING DOCUMENT - COMPLAINT FILED ON 10/25/2002
           Plaintiff's Attorney:   JOHN S BOBROWIECKI JR

10/29/2002 Party(s):  VAUGHN STEVENS III
           ATTORNEY - RETAINED ENTERED ON 10/25/2002
           Plaintiff's Attorney: JOHN S BOBROWIECKI JR

           Party(s):  QUALITY TESTING AND DESIGN INC
           ATTORNEY - RETAINED ENTERED ON 10/25/2002
           Plaintiff's Attorney: JOHN S BOBROWIECKI JR

10/29/2002 Party(s):  MARRINER INC
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 10/25/2002
           AS TO DEFENDANT MARRINER INC.

10/29/2002 Party(s):  MARRINER INC
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 10/01/2002
           AS TO MARRINER INC. SERVED IN HAND TO LINDA DARREL, CLERK.

10/29/2002 Party(s):  LINDA DURRELL
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 10/25/2002
           AS TO DEFENDANT LINDA DURRELL, FILED.

10/29/2002 Party(s):  LINDA DURRELL
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 10/01/2002
           AS TO DEFENDANT LINDA DURRELL SERVED IN HAND, FILED.

10/29/2002 Party(s):  MICHAEL MARRINER
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 10/25/2002

STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-02-225

VAUGHAN STEVENS, III, *et al.,*

        Plaintiffs

    v.

MARRINER, INC., *et al.,*

        Defendants

**DECISION AND ORDER**

This matter is before the court after bench trial. Plaintiffs filed a complaint with the court of 12 counts alleging breach of contract, requesting specific performance of contract, *quantum meruit,* unjust enrichment, fraud, punitive damages and individual counts against owners of the defendant corporation. By summary judgment, the court granted judgment for defendants on count I, breach of contract, count II, specific performance, was withdrawn by plaintiffs, judgment for defendants on allegations of fraud in count V of plaintiffs' complaint, judgment for defendants on counts VI, VII, VIII and IX for punitive damages, and judgment for defendants on counts X, XI and XII, the allegations against individual shareholders.

Defendants have counterclaimed for the return of a deposit (breach of contract) in count I, tortious interference with prospective economic advantage and contractual relationship in count II, conversion of personal property in count III, and abuse of process in count IV.

Plaintiff Vaughan A. Stevens, III is president and owner of Quality Testing and Design, Inc. He has been involved with technical work in support of the construction industry since 1988 and has post-secondary education in geology. He has experience in analysis of soils, hot top asphalt mixing and pavement design. He has certification in

professional organizations in this field. For a number of years, Mr. Stevens and his corporation have provided testing and design services to the defendant corporation as an independent contractor as well as other general contractors and paving companies throughout the State of Maine. Quality Testing and Design, Inc. has had an employee, Mr. Crosby, who has operated as a technician in the same field. Quality Testing and Design, Inc. has a number of pieces of equipment, including an SHRP laboratory which was utilized for on-site evaluation of construction materials. Such evaluation is necessary for contractors to obtain contracts with many entities, including public institutions. As the president and operations manager of Quality Testing and Design, Inc., Mr. Stevens acted in a consulting capacity to contractors and Mr. Crosby as the technician maintaining the testing and quality control of product. Both individuals are qualified to conduct those services.

In taxable year 1999, plaintiff Stevens reported wages of $46,023.70 from Quality Testing and Design, Inc. from income of $221,875.77. In taxable year 2000, plaintiff Stevens reported wages of $50,360 from total income of Quality Testing and Design, Inc. of $189,591.03. In taxable year 2001, Quality Testing and Design, Inc. reported gross receipts of $63,230.55 but for Internal Revenue Services purposes on a U.S. income return from this corporation, a loss in the amount of $61,295.45. While the 2001 IRS form 1040 is not in evidence for plaintiff Stevens personally, the 2001 Maine individual income tax return 1040ME indicates a federal adjusted gross income loss of $19,943.98.

Defendant Marriner, Inc. is a corporation engaged in the business of asphalt paving. It is a privately held company owned by two brothers and a sister who all are active in its operations. Each owns a one-third share in the corporation which is over 40 years old. In addition to paving, the defendants have activities in mineral extraction, crushing of aggregate and manufacturing of asphalt paving material.

Starting in approximately March of 1999, Quality Testing and Design, Inc. provided appropriate testing services to defendant Marriner, Inc. and billed the defendant at various rates per hour or day, depending upon the activity actually engaged in. This included services by an HMA technician, performed by Mr. Crosby, HMA consulting, performed by Mr. Stevens, utilization of testing equipment and some set price activities. Among other considerations, generally the plaintiffs charged $27 per hour for services by its technician, $50 per hour for consulting services, $25 an hour for some technician services, rental of equipment at $250 per hour and mileage. In October of 2001, plaintiff Quality Testing and Design, Inc. performed services for another client using services of SHRP laboratory at a rate of $500 a day. The same laboratory was used for trial "batching" at a rate of $400 a day for the other customer. Work was invoiced for a second customer in September of 1999 with the use of SHRP laboratory at a rate of $500 per day. Further invoices for other customers reflecting the same rate for the use of that laboratory was disclosed in June, July and August of 1999. In addition, services performed for other clients in April 1999 revealed mixed design work at a price of $3,000 per job and "super pave level 1" at a rate of $1,500 a job.

In late March or early April of 2002, plaintiff Stevens approached the defendants proposing a sale of the assets of Quality Testing and Design, Inc. accompanied by a contract of employment whereby Stevens and his employee, Mr. Crosby, would become employees of Marriner, Inc. Mr. Stevens claims he did so because he became aware that Marriner, Inc. had lost an employee. Defendants assert that Mr. Stevens approached them with the proposal because he was in great financial difficulty. Nevertheless, after preliminary discussions, a meeting was held on April 5, 2002. Present at the meeting was Mr. Stevens and three owners of Marriner, Inc., Jefffrey Marriner, Michael Marriner, brothers, and their sister, Linda Durrell. Jeffrey Marriner was the president

and Linda Durrell was the chief financial officer. A description of this meeting appears in this court's Decision and Order of November 19, 2003. Suffice it to say there is considerable disagreement over the results of the meeting. This court has concluded that no contract was entered into for the purchase and sale of Quality Testing and Design, Inc. from Mr. Stevens to the Marriners. However, it was agreed that Mr. Stevens would immediately become an employee of the defendant corporation at a salary of $45,000 per year. It was agreed that Mr. Crosby would become an employee of the defendant corporation at a salary. All parties agree that a large number of matters were discussed regarding the sale of the assets including responsibilities of Mr. Stevens in a position of operations manager for the Marriners, as well as details with regard to defendants furnishing transportation, cell phone and health insurance benefits. Generally speaking, it appears to have been clearly agreed that the sale was to take place contingent upon a provision for a noncompetiton agreement in conjunction with the employment of Stevens and Crosby with the Marriners and the furnishing of sufficient materials by Stevens to the Marriners to assure them that they would be receiving the assets of Quality Testing and Design, Inc. free and clear of liens and encumbrances.

During the period of April, May, June, July and August of 2002, Stevens fully performed services as operations manager for Marriner, Inc. and Crosby fully performed his responsibilities as quality control technician and safety officer for the defendants. They were paid in accordance with normal payroll practices and were provided the benefits agreed upon. Mr. Stevens was successful in performing his responsibilities with respect to the opening of a quarry, the negotiations and bidding for paving contracts, the negotiations and purchasing of raw materials for Marriner's purposes, and supervising and reviewing the quality assurance work by Mr. Crosby.

During this same period, attorneys for Mr. Stevens and the Marriners were in communication regarding the information to be provided by the plaintiffs to the Marriners to effectuate the details of a closing of the transfer of assets free and clear for the agreed purchase price of $150,000. Therein lies the real controversy. Mr. Stevens insists that he supplied the information as to the debts and liabilities of Quality Testing and Design, Inc. to his attorney at the latest, in May of 2002, and his attorney believes, to the best of his recollection, that the material was communicated to the Marriners' counsel. Whatever the real turn of events, in July of 2002, defendants' counsel was still inquiring of plaintiffs' counsel as to the whereabouts of the information necessary to determine liens and encumbrances on the assets of Quality Testing and Design, Inc. In June of 2002, plaintiffs' counsel advised defendants' attorney by letter that there existed bank loans and various federal and state liens but defendants' counsel insists, and plaintiffs have provided no clear evidence to the contrary, that defendants' counsel never received the actual documentation with respect to the liens and encumbrances. In July, it is clear that plaintiff Stevens became aware that defendants' counsel were still seeking the documentation.

By letter dated May 16, 2002, from Jeffrey A. Marriner to Vaughan Stevens and Quality Testing and Design, Inc. specifically stating it was regarding a loan advancement for the purchase of Quality Testing and Design, Inc., a check was forwarded in the amount of $20,000 "to advance funds towards our discussions currently being negotiated into a written agreement for the purchase of Quality Testing and Design, Inc. and/or Vaughan Stevens, III's assets." The letter further asserted that it was agreed that the funds would be used to pay down a bank loan with Stevens furnishing evidence of payment promptly and that the check would be the only advancement until all necessary paperwork and financial information was satisfactorily

forwarded to Marriner, Inc. Further language stated, "If negotiations results in failure to meet agreements, Vaughan Stevens, III (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) agrees to pay back the sum of $20,000 to Marriner, Inc. immediately." The letter goes on to recite the remaining balance on the contract upon satisfactory performance would be $130,000. The final sentence prior to signature block says, "The two undersigned parties agree this day May 16th, 2001, (sic) to the above mentioned terms and conditions:". The letter is signed by Vaughan A. Stevens, III as president of Quality Testing and Design, Inc. and Vaughan A. Stevens, III personally.

In August of 2002, either the 15th or the 16th, the Marriners still had not received the financial information they were looking for and a meeting was held with Stevens at which this was discussed. There was some talk of working out the matter at $50,000 per year for three years but there continued concerns with regard to the debt, and liens, if any, to the IRS. The plaintiffs, believing that they had supplied all of the required information in July, left the meeting, conferred with counsel, worked three more days to attend meetings on behalf of the Marriners and then left the employment.

Plaintiffs claim, among other things, that the defendants have been unjustly enriched by his activities in the amount of $142,857 for his work on the defendants' quarry in the Town of Washington. He believes he is entitled to $59,393 claiming defendants were unjustly enriched by his acquiring sand and gravel at a reduced price with that amount of savings. He believes he should be entitled to the benefit of the defendants' unjust enrichment on contracts which would not have been awarded but for his endeavors resulting in profits to the defendants in the amount of $288,795 for State contracts. He believes he is entitled to profits which he negotiated with the towns of Pittston and Windsor for contracts realizing $38,017. Plaintiffs believe that they should be entitled to the amount of $13,880 for work he performed for an outside client

which he completed while in the employ of defendants for which defendants billed the outside client and collected on the invoice in the amount of $13,880. Finally, plaintiffs claim on behalf of Quality Testing and Design, Inc. the rental of SHRP laboratory at a rate of $500 a day for 90 days, consisting of 70 days of behalf of the Marriners, 10 days on behalf of the outside client and 10 days on other jobs.

On its counterclaim, defendants seek the return of the $20,000 and other damages under various theories of law.

*Quantum meruit*, also sometimes called contract implied-in-fact or quasi contract, involves recovery for services or materials provided under an implied contract. *Paffhausen v. Balano*, 1998 ME 47, 708 A.2d 269. The party claiming the existence of an implied contract must demonstrate a reasonable expectation to receive compensation for his services and a concurrent intention of the other party to compensate him. *Howard & Bowie v. Collins*, 200 ME 148, 759 A.2d 707. It is a principle of contract law that when one renders services to another at the request, or with the knowledge and consent, of the other, and the surrounding circumstances make it reasonable for him to believe that he will receive payment therefore from the other, and he does so believe, a promise to pay will be inferred. *Danforth v. Ruotolo*, 650 A.2d 1334 (Me. 1994).

Unjust enrichment is the recovery for the value of a benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels the performance of a legal and moral duty to pay. The damages analysis is based on principles of equity, not contract. *Paffhausen*, 708 A.2d at 271. Unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship but when on the grounds of fairness and justice the law compels performance of a legal and moral duty to pay. *In re: Wage Payment Litigation*, 2000 ME 752, 759 A.2d 217. The most significant element of a doctrine of unjust

enrichment is whether the enrichment of the defendant is unjust. *Bowie*, 759 A.2d at 710.

There is no question that the exclusive employment of Stevens and Crosby by Marriner, Inc. was contingent upon the sale of the assets of Quality Testing and Design, Inc. to Marriner, Inc. and a resolution of the issue of a noncompete agreement. While there was some discussion of issues of probationary periods and other protections, it appears these matters were almost exclusively between the attorneys and did not reach the parties. While Mr. Stevens did not have a specific employment contract, there can be no equivocation but that he had a contract implied by the understanding of the parties and the performance by both sides. Mr. Stevens was provided the information as to the expectations of his employment as operations manager, he was supplied a wage, he accepted that wage, performed under that wage, and did so in a payroll form with appropriate deductions and benefits. There is no evidence that Mr. Stevens was hired for that period as a consultant and no evidence that the defendants had the expectation that Mr. Stevens was going to be expecting a rate of compensation of $50 per hour or a share in profits derived through his efforts as operations manager. Both sides presented evidence with regard to profits and losses with plaintiffs asking for the benefits of the profits and defendants asking to be reimbursed for their losses, both as a result of plaintiffs' performance. However, this was a quasi, implied-at-law contract in which both sides would normally expect benefits and losses from normal business practices. There is no evidence that plaintiff Stevens was not fully qualified to perform as operations manager nor is there any evidence that his performance was in a category wherein he would expect to be paid $50 per hour. There is no evidence that plaintiff had a reasonable expectation to be paid a wage consistent with consulting services or is there any evidence of a concurrent intention of the Marriners to pay him at the rate of a

consultant. Under the circumstances, under the contract theory of *quantum meruit*, plaintiff is entitled to relief which he has received in the form of his salary.

Under this implied contract, there was no condition as to term. Defendants were aware that the employment was part and parcel of a proposed contract to purchase the assets of plaintiffs' corporation. Defendants were well aware that plaintiffs believed they had provided the necessary information and that progress had not been made toward closing the details of the sale of assets. There is nothing in the contract to be implied to expect that the plaintiffs were not free to terminate his agreement at any time and the court finds no merit in defendants' claim to be reimbursed for the $6,440 plus paid Barrett Paving Materials, Inc. to complete plaintiffs' work.

Prior to April 5, 2002, plaintiffs had agreed to perform consulting and technician services for Bruce Manzer, Inc. It appears that Marriner, Inc. was aware of this commitment and agreed that plaintiffs could complete that obligation while working under their employment agreement, as implied. The work was performed by plaintiffs and his employee during the period of time of April 25, 2002 to May 23, 2002, and was billed on invoice of Quality Testing and Design, Inc. to Manzer in the amount of $13,880.30 on a bill of Marriners, Inc. The description is "RE: 02-101A Rumford MDOT project per enclosed invoicing by Quality Testing and Design, Inc. for technician work performed on the above mentioned project." The amount was paid to Marriner, Inc. on July 24, 2002, by Manzer. There is no evidence to satisfy this court that the defendants were entitled to work performed by Quality Testing and Design, Inc. for a third party or any reasonable expectation that it would be entitled to the benefit of that work. In this regard, Marriner, Inc. has been unjustly enriched by the services of Quality Testing and Design, Inc. and should provide reimbursement to that corporation in that amount.

The understandings reached at the April 5, 2002 meeting by the parties apparently did not include any resolution with respect to the assets of Quality Testing and Design, Inc. The defendants deny reaching any agreement with respect to utilization of the equipment. The Marriners testified they had equipment of their own but agreed they did not have all of the equipment utilized by Stevens and Crosby. The court finds no theory of *quantum meruit* to provide an award to Quality Testing and Design, Inc. for the use of that equipment. However, it appears clear that the defendants were unjustly enriched by the ability on the part of Crosby in performing his quality assurance activities to utilize the property of Stevens' corporation. The use of that equipment clearly was a benefit provided to the defendants. The court is satisfied that the defendants were aware that plaintiffs were utilizing some of the equipment and clearly, under principles of equity, it would be unjust for the defendants to retain that benefit without payment of its value.

The issue is its value. Plaintiffs claim 90 days at $500 per day for the use of the SHRP laboratory. Defendants argue that upon plaintiffs leaving the employment, Barrett Paving Materials, Inc. provided a laboratory truck at the rate of $120 per day. Defendants further argue that plaintiffs only actually used the laboratory equipment for 16½ days, 13 days on Route 32 and 3½ days on Route 17. Neither party has produced any precise evidence as to the actual use of the equipment. Defendants have produced 20 pages of invoices of Quality Testing and Design, Inc. to Marriner, Inc. during the period of April, 1999 through May of 2001. Rental for the SHRP laboratory does not appear in any of the invoices. Plaintiffs have presented an invoice dated November 13, 2002, alleging 100 days of use of the SHRP laboratory at a rate of $700 per day chargeable to Marriner, Inc. This invoice lacks credibility because it is not consistent with other billings of Quality Testing and Design, Inc. and was prepared in anticipation

of litigation on behalf of plaintiffs' attorney. However, the court notes that the invoice prepared for Bruce Manzer dated May 28, 2002, shows nine days of utilization by SHRP at a rate of $500 per day. During the course of the project it took 17 days. The invoice of Barrett Paving Materials, Inc. to Marriner, Inc. for work performed in August through November of 2002 shows 43 days of work with 42 days of use of the lab truck. Invoices by plaintiffs to other clients during the period of 2000-2001 show only three days of use of the SHRP laboratory at a rate of $500 per day. The court notes that other equipment of Quality Testing and Design, Inc., most notably a gyro & oven, in previous years had been utilized and billed on behalf of defendants at a rate of $250 per day.

The most compelling testimony in this regard is that of Mr. Crosby. He agreed that defendants had some testing equipment of their own but that the plaintiffs preferred that Quality Testing and Design, Inc. equipment be used. He specifically designated five pieces of equipment belonging to Quality Testing and Design, Inc. used for defendants work. He noted the gyro was frequently used but no one kept any record of the days the equipment was used. There is no evidence that the entire SHRP lab was used.

In the final analysis, the only direct evidence of the use of the equipment in terms of the value is that actually billed by Barrett Paving. Mr. Crosby testified he routinely used the equipment. Using the value established by the Barrett invoice and the length of the performance of the employment, the court believes a reasonable award to Quality Testing and Design, Inc. on the basis of unjust enrichment is $10,800.

It is agreed that the last payroll check provided to the plaintiffs was for a period ending three days before he actually left the employment and it is agreed that he did perform for that three days on behalf of defendants. The court has granted the plaintiffs the opportunity to amend the pleadings to conform to the evidence and, therefore,

while it he does not have a specific complaint in that regard, the court finds that Vaughan Stevens is entitled to three days pay at the payroll rate for which he was impliedly employed by defendants. Mr. Crosby is entitled to the same but he is not a party to this litigation.

Defendants, by its counterclaim, asserts its entitlement to a return of their $20,000 as supplied as an advancement toward purchase of the assets. The court is satisfied that the letter of May 16, 2002, signed by Jeffrey A. Marriner and Vaughan A. Stevens, III does constitute an express contract whereupon the parties agree that the $20,000 would be reimbursed to the Marriners in the event the parties fail to reach a written agreement for the purchase of Quality Testing and Design, Inc. and/or Vaughan Stevens, III's assets by Marriner, Inc. By the failure to return the $20,000, plaintiffs have breached that agreement, defendants are entitled to judgment on count I of its counterclaim.

The court finds no evidence that plaintiffs have intentionally and tortiously interfered with an economic advantage or a valid contract or that Stevens interfered through fraud or intimidation. *Rutland v. Mullen,* 2002 ME 98, 798 A.2d 1104.

Defendants claim that plaintiffs retained certain of its property and converted it to its own use upon leaving defendants' premises. The property involves mix designs, plans, and other personal property. The court has heard the testimony and witness on behalf of both parties and is not satisfied that the defendants have met its burden of proof in this regard and denies relief on count III of its counterclaim.

Defendants assert that plaintiffs have abused civil process in this litigation. The court finds no evidence to suggest use of process in an improper manner or the existence of an ulterior motive. *Dumont v. Fleet Bank,* 2000 ME 197, 760 A.2d 1049.

The entry will be:

Judgment for plaintiff Vaughan A. Stevens, III on count III of his complaint for *quantum meruit* in the amount of salary already received plus three days at a gross salary of $865 per week for damages of $519; judgment for defendants on count III of complaint of Quality Testing and Design, Inc.; judgment for plaintiff on count IV of complaint of Quality Testing and Design, Inc. in the amount of $10,800 for defendants' use of equipment and $13,880.30 for monies received on the Manzer contract; judgment for defendants on Stevens' count IV for unjust enrichment; judgment for defendant on count I of its counterclaim in the amount of $20,000; judgment for plaintiff on counts II, III and IV of defendants' counterclaim; prejudgment interest on judgments to run in 2004 at 4.28%; pre-judgment interest on judgments for 2005 to run at 5.77%; post-judgment interest on judgments to run in 2005 at 8.77%; as prevailing party, plaintiff to recover costs.

Dated: April___5___, 2005

Donald H. Marden
Justice, Superior Court

VAUGHN STEVENS III - PLAINTIFF
24 CONY RD
AUGUSTA ME 04330
Attorney for: VAUGHN STEVENS III

MITCHELL & DAVIS
86 WINTHROP STREET
AUGUSTA ME 04330

Attorney for: VAUGHN STEVENS III
JOHN S BOBROWIECKI JR - WITHDRAWN 03/24/2003
FARRIS HESELTON LADD & BOBROWIECKI, PA
251 WATER STREET
PO BOX 120
GARDINER ME 04345-0120

QUALITY TESTING AND DESIGN INC - PLAINTIFF

Attorney for: QUALITY TESTING AND DESIGN INC

MITCHELL & DAVIS
86 WINTHROP STREET
AUGUSTA ME 04330

Attorney for: QUALITY TESTING AND DESIGN INC
JOHN S BOBROWIECKI JR - WITHDRAWN 03/24/2003
FARRIS HESELTON LADD & BOBROWIECKI, PA
251 WATER STREET
PO BOX 120
GARDINER ME 04345-0120


vs
MARRINER INC - DEFENDANT
CAMDEN STREET
ROCKPORT ME 04856
Attorney for: MARRINER INC
DAVID PERKINS  - RETAINED
PERKINS OLSON  PA
30 MILK STREET
PO BOX 449
PORTLAND ME 04112-0449

JEFFREY A MARRINER  - DEFENDANT
CAMDEN STREET
ROCKPORT ME 04856
Attorney for: JEFFREY A MARRINER
DAVID PERKINS  - RETAINED
PERKINS OLSON  PA
30 MILK STREET
PO BOX 449
PORTLAND ME 04112-0449

LINDA DURRELL  - DEFENDANT
CAMDEN STREET
ROCKPORT ME 04856

DOCKET RECORD

Attorney for: LINDA DURRELL
DAVID PERKINS  - RETAINED
PERKINS OLSON  PA
30 MILK STREET
PO BOX 449
PORTLAND ME 04112-0449


MICHAEL MARRINER  - DEFENDANT
CAMDEN STREET
ROCKPORT ME 04856
Attorney for: MICHAEL MARRINER
DAVID PERKINS  - RETAINED
PERKINS OLSON  PA
30 MILK STREET
PO BOX 449
PORTLAND ME 04112-0449


Filing Document: COMPLAINT                    Minor Case Type: CONTRACT
Filing Date: 10/25/2002

## Docket Events:

10/29/2002 FILING DOCUMENT - COMPLAINT FILED ON 10/25/2002
           Plaintiff's Attorney:  JOHN S BOBROWIECKI JR


10/29/2002 Party(s):  VAUGHN STEVENS III
           ATTORNEY - RETAINED ENTERED ON 10/25/2002
           Plaintiff's Attorney: JOHN S BOBROWIECKI JR


           Party(s):  QUALITY TESTING AND DESIGN INC
           ATTORNEY - RETAINED ENTERED ON 10/25/2002
           Plaintiff's Attorney: JOHN S BOBROWIECKI JR


10/29/2002 Party(s):  MARRINER INC
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 10/25/2002
           AS TO DEFENDANT MARRINER INC.


10/29/2002 Party(s):  MARRINER INC
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 10/01/2002
           AS TO MARRINER INC. SERVED IN HAND TO LINDA DARREL, CLERK.


10/29/2002 Party(s):  LINDA DURRELL
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 10/25/2002
           AS TO DEFENDANT LINDA DURRELL, FILED.


10/29/2002 Party(s):  LINDA DURRELL
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 10/01/2002
           AS TO DEFENDANT LINDA DURRELL SERVED IN HAND, FILED.


10/29/2002 Party(s):  MICHAEL MARRINER
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 10/25/2002
           AS TO DEFENDANT MICHAEL MARRINER, FILED.


10/29/2002 Party(s):  MICHAEL MARRINER