STATE OF MAINE                                SUPERIOR COURT
KENNEBEC, SS                                  Civil Action
                                              Docket No. CV-16-009

ELLIS CONSTRUCTION, INC.,
        Plaintiff
                                        **DECISION AND JUDGMENT**
v.

TOWN OF FAMINGDALE
        Defendant


## INTRODUCTION

This matter is before the court for decision following a one-day nonjury trial held on January 9, 2018. In lieu of oral argument after the close of the evidence, the parties submitted written post-trial briefs, the last of which was received by the court on January 26, 2018.

The Plaintiff, Ellis Construction, Inc., commenced this action on January 8, 2016 with the filing of a four-count complaint against the Defendant Town of Farmingdale. On September 21, 2016, the Plaintiff filed its First Amend Complaint in which it added a fifth count.[1] As amended, the complaint alleges that the Defendant breached its contract with Ellis Construction to perform Sewer, Inspection and Maintenance for the Town in 2015-2016 (Count I). The complaint also seeks recovery under theories of unjust enrichment (Count II) and *quantum meruit* (Count III). Count IV asserts a violation of the Freedom of Access Act (FOAA) by virtue of an allegedly unauthorized executive session by the Farmingdale Select Board. Finally, the Plaintiff seeks remedies under the Maine Prompt Payment Act – 10 M.R.S. §1111 et seq. – (Count V).

---

[1] The Plaintiff's Motion to Amend was granted without objection on September 16, 2016.

1

Trial was held on January 9, 2018, at which the court received the testimony of the following witnesses called by the Plaintiff: Angenette (Angie) Ellis; Christopher Ellis; Jim Grant, and; Nancy Frost. The Defendant called Benjamin Sanborn and Rose Webster. Joint Exhibits 1-24, Plaintiff's Exhibits 25-26 and Defendant's Exhibits 28-30 were admitted into evidence.[2]

Based on the evidence presented at trial, and after consideration of the parties' post-trial written arguments, the court makes the following findings of fact.

## FINDINGS OF FACT

In December 2009 Ellis Construction and the Town entered into a "Sewer Inspection, Repair & Maintenance Contract" for a one-year period "to be automatically extended for a total of three years unless sooner terminated . . ." (Jt. Ex. 2). That contract would have expired on December 31, 2013, except that in July of that year the parties entered into a new agreement to run from July 1 to June 30 for one-year "with the Town option to renew annually up to three (3) years, unless sooner terminated . . . ." (Jt. Ex. 1).

Under both the 2009 and 2013 contracts, the Farmingdale Sewer Committee acted in an advisory capacity to the Select Board and was the designated entity to "interface with the Contractor [Ellis Construction] for appropriate and timely work activities . . . ." Moreover, a member of the Select Board acted as the Board liaison with the Sewer Committee. The court finds that in 2014 the contract was renewed without any formal or official action of the Select Board, except by way of authorizing the payment of the first installment of the contract, thereby essentially exercising the option to renew.

The 2013 contract (Jt. Ex. 1) provided:

---

[2] Plaintiff's Exhibit 27 was marked and used solely for illustrative purposes.

The Town and the Contractor may amend the contract only if all parties reach agreement upon the revised terms. In the event the parties cannot reach agreement on the terms of the renewal, the contract shall terminate at the end of the calendar year, as provided above. At any time while this contract remains in effect, the Town and the Contractor may enter into negotiations to revise the scope of work and the labor and equipment rates, if necessary. Nothing in this contract shall be interpreted to create an expectation of a continuing or ongoing business relationship between the Town and the Contractor.

The 2013 contract separately identified the duties of the Plaintiff as "Inspection and Maintenance," and "Repair." *See* ¶¶ 4 & 5. With respect to the maintenance portion of the contract, the Town was to pay Ellis a total of $3,300 in three installments, to wit, July 1, December 31 and June 30. *See* ¶ 6. Any repair work "would be completed at the rates specified by the Contractor in this proposal." ¶ 5(a). It is the court's understanding that the Sewer Committee and the designated Plumbing Inspector would "interface" with the Contractor (Ellis) to request that work be done if needed, and to assess whether Ellis' work performance was satisfactory. ¶¶ 6 & 8. The Plaintiff, through the testimony of Angie Ellis, estimated that, on average, it was paid $22,000 - $25,000 per year for extra work it was requested to perform by the Town. The court finds that this "extra" work was not guaranteed under the contract and would only be performed and paid for if requested by the Town.

In February 2015 an issue developed that involved an invoice from Ellis Construction that had been approved by the Sewer Committee and the Plumbing Inspector, but not yet approved for payment by the Select Board. The issue was brought up at the Sewer Committee's meeting of February 19, 2015, and a discussion

3

ensued about Jim Grant, the Select Board liaison to the Committee. An individual present at the meeting questioned whether Mr. Grant was communicating well with contractors for the Town, including Ellis Construction and whether he should cease serving as Board liaison. Mr. Grant made it clear that he had no intention of stepping down as liaison and maintained that he had a good relationship with the Committee. Another member of the Select Board was also present at the meeting and remarked that it was she who had raised questions about the Ellis Construction invoice as well as other bills submitted by vendors doing business with the Town.[3] Towards the end of the meeting, there was a reference to the contract between the Town and Ellis Construction and whether all Committee members had a copy of it. Chris Ellis of Ellis Construction was present at this meeting and answered questions about the invoice.

The issue of the invoice submitted by the Plaintiff was again brought up at the Sewer Committee meeting of March 19, 2015.[4] Mr. Grant and Nancy Frost were also at this meeting, as was Chris Ellis who tried to answer the questions from the Select Board members.

At the May 21, 2015 meeting of the Sewer Committee Angie Ellis was present as was Jim Grant, Board liaison. Mr. Grant "handed out a draft of the Sewer Maintenance Contract to the Sewer Committee." A copy of the draft was also given to Angie Ellis. The minutes of the May 21, 2015 meeting reflect the following: "By giving Angie Ellis a copy of the contract it is agreed that negations [sic][5] have started between the Town of Farmingdale and Ellis Construction." A motion was

---

[3] The minutes of the February 19, 2015 Sewer Committee meeting identified "Nancy" as Nancy Grant. The court believes that the Nancy referred to in the minutes was actually Nancy Frost, a Select Board member who testified at trial.

[4] The invoice in question apparently pertained to the cleaning of the "meter pit."

[5] The court treats this as an obvious typographical error, which should read: "negotiations."

4

unanimously passed that the draft copy of the contract was provided to Ellis Construction "in anticipation of negotiations and renewal and changes."

In an e-mail dated June 4, 2015, Angie Ellis wrote to the secretary of the Sewer Committee that "Chris [Ellis] has reviewed the draft and is agreeable to the changes." That e-mail was forwarded to all members of the Sewer Committee as well as to Select Board members Grant and Frost.[6]

At the June 18, 2015 Sewer Committee meeting, all three Select Board members were in attendance. Angie Ellis, on behalf of Ellis Construction, was also there. The minutes of that meeting reflect that there was extensive discussion about the draft Sewer Maintenance contract. It is clear from the minutes, however, that a final version of the contract was not ready and additional edits to the contract were being or might be considered and would have to be reviewed and found acceptable to the Select Board and Ellis Construction. No formal vote was taken on the matter, but at the end of the discussion the minutes read as follows:

> Ben [Sanborn, Acting Chair] stated that after reviewing the contract and making changes to send to the Select Board and have the Select Board send out to Ellis and see if Ellis is agreeable to the changes, and if there are no changes after reviewing the contract then we would recommend that the Select Board go ahead and renew the contract with Ellis Construction for the final year. Jim [Grant] will send out a draft of the Sewer Maintenance contract no later than tomorrow to all members for their review and any recommended changes.

---

[6] Apparently, when the draft contract was provided to Angie Ellis at the Sewer Committee meeting on May 21, 2015, a deadline of June 5, 2015 was imposed for Ellis Construction to respond.

At this meeting of the Sewer Committee there was also further discussion about the bill from Ellis Construction pertaining to the cleaning of the "meter pit," and why certain equipment and the number of employees were needed for that particular job.

At the June 24, 2015 meeting of the Farmingdale Select Board, the issue of the unpaid invoice from Ellis Construction relating to the cleaning of the "meter pit" was again discussed. The Board voted unanimously to seek legal advice from counsel as to whether the bill should be paid.[7]

There was evidence presented at trial that the Select Board requested Ellis Construction, or its representative, to be present at the Select Board meeting of July 8, 2015 to discuss issues relating to the Sewer Maintenance contract. How this request was made is unclear to the court. The minutes of the June 24, 2015 Select Board meeting do not mention such a request, and there was no documentation submitted to the court that a request for attendance at the July 8 meeting was forwarded to Ellis Construction. Nevertheless, that such a request was made by the Select Board and received by Ellis Construction is made clear by the letter dated July 8, 2015 to the Select Board from Angie Ellis. (Jt. Ex. 13).

Ms. Ellis started her letter by noting that it was "in response to the notification dated June 26, 2015 requesting the presence of Ellis Construction at the July 8[th] select board meeting to discuss the sewer maintenance contract." She then informed the Select Board that "Ellis Construction will not be attending the meeting as it is unnecessary." Ms. Ellis described a meeting with the Select Board as being "superfluous" since the sewer contract was extensively discussed at the Sewer Committee meeting and had been "approved" at that time (apparently referring to the June 18, 2015 Sewer Committee meeting). She informed the Select Board that

---

[7] The issue about this invoice appears to center on whether it included charges for "training" and other items not permitted by the contract to be charged to the Town such as OSHA certification.

6

it "lacks the expertise to meaningfully discuss issues related to sewer maintenance and safety . . . ." She requested that if a meeting was still deemed necessary by the Board, it should send in writing and by certified mail "an explanation as to the nature and purpose of the meeting, which will be reviewed by our attorney." Ms. Ellis asserted that the "select board has a history of targeting our company and questioning contracts, invoices, business and safety practices which is creating a hostile working environment." She also questioned whether Ellis Construction was being treated fairly and equitably by the Town, "especially as our invoices and practices are discussed at public meetings." Finally, Ms. Ellis informed the Select Board that Ellis Construction's "past practice" had been to clean the five pump stations during the week of July 4th, but it was only able to clean three of the pump stations due to a lack of hydrogen peroxide, "so the town will need to order more."

At the Select Board meeting of July 8, 2015, the letter from Ms. Ellis was noted in the minutes. The discussion at the meeting, according to the minutes, centered on sending a letter to Ellis Construction making it clear that "all costs associated with training and safety necessary to comply with OSHA shall be provided by the contractor at no cost to the Town," and the letter should be reviewed and sent "before the Contract is signed."

In the meantime, sometime during the first week of July 2015, Ellis Construction performed work that included cleaning out the pump stations. Only three of the stations could be cleaned before Ellis Construction ran out of hydrogen peroxide. Chris Ellis notified the secretary of the Sewer Committee on July 7, 2015 that more hydrogen peroxide needed to be ordered, and the Chair of the Committee immediately directed the secretary to place the order. (Jt. Ex. 12). On July 8, 2015, Ellis Construction submitted an invoice in the amount of $1,100 for the "First installment of sewer maintenance contract." (Jt. Ex. 24). That invoice was re-submitted numerous times but has never been paid.

7

At the Sewer Committee meeting of July 16, 2015, the status of the Sewer Maintenance Contract was discussed by the Chair (Ben Sanborn) who stated his understanding that the matter was at the Select Board but no vote had been taken.

The minutes of the Select Board meeting of August 5, 2015 reflect that "[a] letter to Ellis construction [sic] regarding an issue on payment structure with OSHA training was signed and will be sent with the amended contract to them by Certified mail and regular mail." An undated letter to Ellis Construction was signed by all three members of the Farmingdale Select Board. (Jt. Ex. 15). The court finds that this letter, with a proposed amended sewer maintenance contract, was sent to Ellis Construction on August 6, 2015 and received on August 8, 2015. (Jt. Exs. 16 & 17). The letter (Jt. Ex. 15) states:

> Enclosed is a copy of the proposed 2015 sewer maintenance contract. If you wish to continue with the third and final year of the contract please sign and return it to the Town Office.

The letter elaborated on the requirement that costs associated with training and safety measures necessary to comply with OSHA would not be approved for payment.

The version of the draft contract sent to Ellis Construction on August 6, 2015 apparently contained a provision that was highly objectionable to Ellis Construction.[8] The minutes of the August 19, 2015 Select Board meeting make reference to the Town's attorney and the attorney for Ellis Construction reviewing the contract, and the Sewer Committee Chair (Ben Sanborn) planning to speak with the Town attorney regarding "some language issues that have been questioned in the contract." The minutes of that meeting also include some comments by at least one

---

[8] A copy of this proposed contract was not offered or admitted into evidence at the trial.

8

Board member questioning whether the sewer maintenance contract should be renewed.

The next day, August 20, 2015, the Sewer Committee met and the status of the sewer maintenance contract was brought up. As reflected in the minutes, there was considerable discussion about a new provision in the latest version of the proposed contract that was viewed as violating Maine's Prompt Payment Law. Ultimately, the Committee voted unanimously to strike the offending language in the proposed contract.

In the meantime, in an e-mail dated August 18, 2015 and sent to the members of the Select Board, the Town's attorney "strongly" recommended that the offending language in §6(a) of the proposed contract be removed.[9] (Jt. Ex. 19). The next time the subject of the Sewer Maintenance Contract appears in the minutes of either the Select Board or the Sewer Committee is at the September 16, 2015 Select Board meeting.[10] The minutes read as follows:

> There was a discussion on the pending Sewer Contract, it was sent to the attorney for her review and also the contractor's attorney, it was felt that there has been sufficient time for all to review and the Board needs to know the status of it. Rose [Webster][Town Clerk, Treasurer and Tax Collector] said that she and Natalie [Jackson][secretary to the Sewer Committee] call [sic] today and was told that there will be a representative from Ellis Construction at the Sewer Committee meeting tomorrow evening and hopefully they will have an answer on the contract.

---

[9] The language in §6(a) that Ellis Construction found objectionable reads as follows: "If any discrepancies occur with an itemized bill the contractor shall attend a Select Board meeting and discuss the bill with the Board of Selectmen. The Farmingdale Board of Selectmen shall have the right to amend any itemized bill that has discrepancies. The contractor agrees the Board of Selectmen make the final decision on all discrepancies." (Jt. Ex. 19).

[10] The court finds that a revised contract without the offending language of section 6(a) was sent to Ellis Construction sometime between August 20 and September 16, 2015. *See* Joint Exhibit 18.

9

> Nancy Frost made a motion that if the Sewer Maintenance Contract is not signed tomorrow night, that the contract will be put out to bid.
> Wayne Kilgour second
> Vote 3/0

The next evening, September 17, 2015, the Sewer Committee met. Ellis Construction sent a representative to the meeting. Select Board member Nancy Frost acted as Board liaison. The minutes reflect that Angie Ellis on behalf of Ellis Construction had signed the Sewer Maintenance contract in front of the town clerk earlier that day. (Jt. Ex. 4). It was expected that the Sewer Committee Chair would sign the contract, which he subsequently did.[11] The minutes also reflect that the contract would be sent to the Select Board for "their signature" on September 23, 2015. There was discussion about what to do with the invoice submitted by Ellis Construction for the "First installment" on the maintenance contract that had been submitted in July, 2015. Board liaison Nancy Frost "asked if this means the contract starts today or does it start in July."

The minutes of the meeting of the Farmingdale Select Board for September 23, 2015 reflect the following:

> Nancy Frost – the contractors and the Board need to deal civil with each other. A letter wrote [sic] by Ellis Construction noted that they did not like dealing directly with the Selectboard. Nancy said that we had dragged out [sic] feet on the contract and that she had made a motion last week that Ellis Construction had to sign the contract by the Sewer Meeting or that it would be put back out to bid. Ellis Construction did come in and sign the contract. Rose said that Ben Sanborn, Chairmen of the Sewer Committee, had come in and signee d [sic] contract as well.
>
> JoAnn Choate spoke up and said that the committee started working on the contract about the first of May and here it is October and we are still

---

[11] There does not appear to have been a formal vote by the Sewer Committee recommending approval of the revised contract with Ellis Construction. While a majority of the Sewer Committee members favored the contract, support for it was not unanimous on the Committee. *See* Joint Exhibit 18.

10

going around on this. That Ellis Construction is being held to different standards than other contractors and not performing as per the contract. Did the Board see or review any year end sewer maintenance reports and evaluations, have they been attending the meetings as required by the contract. Michael St. had work done this winter with a sewer problem and to date the contractor has not coordinated with the Road Commissioner to repair the street and the driveway. JoAnn feels that there are many problems and that problems are just being ignored. JoAnn also said that she has proof that there are illegal things going on in the Town that she had spoken to the FBI and verified what Jimi [sic] had said regarding the taped meeting. That the Selectboard is responsible to take care of the residents and any decisions that they take should not be made lightly.

Jim Grant made a motion at 7:05pm to go temporarily into executive session MRSA §405(6)(D) to discuss the contract.
Nancy Frost second
Vote 3/0

Jim Grant made a motion at 7:27pm to reopen the meeting.
Nancy Frost second
Vote 3/0

Jim Grant made a motion that after extensive conversation in the executive session and with the new information that the Board will not reissue the Sewer Contract that it will be going back out to bid and the current contractors are eligible to bid on it as well.
Nancy Frost second
Vote 3/0

Following the meeting of September 23, 2015, the Select Board sent an undated letter to Ellis Construction informing it that the Board had voted "to not renew the Farmingdale Sewer Maintenance Contract with your company for the final year of three (3) one (1) year contracts." (Jt. Ex. 20) The letter also informed Ellis Construction that it could submit a proposal if it wanted to be considered "for the next Sewer Maintenance Contract." The letter was signed by all three members of

11

the Select Board. The Sewer Maintenance Contract that was signed by Angie Ellis on September 17, 2015 was never signed by the Select Board. In early November 2015, the Sewer Maintenance Contract was awarded to Excalibur. (Jt. Ex. 5). Ellis Construction commenced this action on January 6, 2016.

At the trial of this matter and throughout the minutes of the Select Board meetings in 2015 that the court has reviewed, there was reference to some type of covert FBI investigation in Farmingdale. The references were vague and non-specific and the court has given those references no credence whatsoever in reaching its Decision and Judgment in this case.

## DISCUSSION

### A. Breach of Contract (Count I)

"[A]ny action to enforce a contract depends on the existence of the contract itself . . . ." *Sullivan v. Porter*, 2004 ME 134, ¶ 12, 861 A.2d 625. "To demonstrate that the parties had a legally binding contract, the plaintiff must establish that there was a meeting of the minds between the parties – or 'mutual assent to be bound by all [the] material terms' of the contract." *Tobin v. Barter*, 2014 ME 51, ¶ 8, 89 A.3d 1088. Because the existence of a contract "intricately" involves "the conduct of the parties" it is a question of fact. Negotiations as to the terms of a future agreement do not constitute a contract. "Whether the parties are merely negotiating the contract, or entering into a present contract, is purely a question of intention." *McClare v. Rocha*, 2014 ME 4, ¶ 20, 86 A.3d 22. The "mutual assent" of the parties is a critical and essential component to the formation of a contract. *Forbes v. Wells Beach Casino, Inc.*, 307 A.2d 210, 216 (Me. 1973).

The Plaintiff argues that a contract between it and the Town of Farmingdale for the third year of the Sewer Maintenance Agreement existed as far back as June 4, 2015 when Angie Ellis wrote to the secretary of the Sewer Committee that her

12

husband (Chris) had reviewed the draft contract and was "agreeable to the changes." The court disagrees that a contract was formed at that point in time.

It is obvious to the court from the minutes of the various meetings of the Sewer Committee and the Select Board in May and June 2015 that the parties were still in the negotiation stage of whether to renew the Sewer Maintenance Contract. The Town was clearly focused on the invoice submitted by Ellis Construction that appeared to include charges for "training" and compliance with OSHA certification. The court finds that while Ellis Construction may have been "agreeable" to the initial proposed contract changes, the Town through the Select Board had not assented to exercising its option to renew the Agreement at that point. In short, the Select Board wanted the issue of the invoice and billing practices with Ellis Construction clarified and settled before it would agree to a contract extension. That issue was still a topic of discussion by the Select Board at its June 24, 2015 meeting when it voted to seek legal advice as to whether the pending invoice should be paid.

The court finds that the relationship between Ellis Construction and the Select Board took a dramatic turn for the worse when Angie Ellis wrote her letter of July 8, 2015 and refused to attend the Select Board meeting on that date. The court has no doubt that the Select Board was deeply offended by the tone and content of that letter and found it to be unprofessional and disrespectful. The response of the Select Board was to propose a change to the contract that, essentially, mandated Ellis Construction to appear before the Board to discuss any billing discrepancies and gave the Board the ultimate decision-making authority regarding all such discrepancies.

Not surprisingly, Ellis Construction objected to that language and refused to accept it. Thus, there was clearly no "meeting of the minds" or mutual assent at that point in time (late August – early September 2015). Indeed, the court finds that just the opposite was true. The parties were not in agreement at all on the terms of the

13

agreement or whether the Town was going to renew the contract for a third and final year.

That brings the court to the Select Board meeting of September 16, 2015. By this time the contract had been re-drafted and the offending language in section 6(a) had been removed. In essence, the Board wanted to know what Ellis Construction was doing with the proposed contract. The Board had been informed that a representative of Ellis Construction would be attending the Sewer Committee meeting the following night "and hopefully they will have an answer on the contract." At that point, the Board voted "that if the Sewer Maintenance Contract is not signed tomorrow night, that the contract will be put out to bid."

Angie Ellis did sign the contract the following day on behalf of Ellis Construction. The issue for the court is whether the Select Board's vote on September 16, 2015 combined with Angie Ellis' signature on the contract on September 17, 2015 constituted "[a] mutual assent" to be bound by the contract.

The court does not interpret the Select Board's action on September 16, 2015 as being an intent or assent to be bound by the contract if Ellis Construction signed it the next day. Rather, the court interprets the Board's action and vote to mean only that it wanted to know for certain no later than the night of September 17, 2015 whether Ellis Construction was going to sign the contract. The Board's action on September 16, 2015 did not mean that it had decided and intended to be bound by the contract if Ellis Construction signed it the next day. In other words, the Board had not manifested its assent to exercising the Town's option to renew the contract for the third year. It was simply setting a "drop dead" date when Ellis Construction had to make up its mind.

Accordingly, the Select Board acted within its authority on September 23, 2015 in declining to exercise the Town's option to renew the Sewer Maintenance Contract. The Plaintiff has failed to prove the existence of a contract or a breach

14

thereof. Accordingly, judgment will be entered for the Defendant on Count I of the Amended Complaint.

### B. Unjust Enrichment (Count II)

The Plaintiff's claim for unjust enrichment is not precluded simply because the Defendant is a municipality. *Tucci v. City of Biddeford*, 2005 ME 7, ¶ 14, 864 A.2d 185. To prevail on a claim for unjust enrichment, however, a plaintiff must show that: (1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit and; (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value. *Forrest Assocs. V. Passamaquoddy Tribe*, 2000 ME 195, ¶ 14. Unjust enrichment permits recovery for the value of the benefit conferred "when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay. . . ." *Paffhausen v. Balano*, 1998 ME 47, ¶ 6.

The court is satisfied that the Plaintiff has established the elements of unjust enrichment in this case. The Plaintiff performed the cleaning of the pump stations in early July 2015 and, according to the testimony of Chris Ellis, continued to perform work for the Town into September in anticipation that the contract would be renewed. While the value of that benefit was not itemized in detail, the court finds that the sum of $1,100 represents a fair value for the benefit conferred on the Town. Judgment will be for the Plaintiff on Count II of the Amended Complaint in the amount of $1,100.

### C. *Quantum Meruit* (Count III)

"To sustain a claim in quantum meruit, a plaintiff must establish that '(1) services were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for

15

the plaintiff to expect payment.'"[12] *Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 11, 760 A.2d 1041 *quoting Carvel Co. v. Spencer Press, Inc.* 1998 ME 74, ¶ 12, 708 A.2d 1033, 1036. *See also Jenkins, Inc. v. Walsh Bros.*, 2001 ME 98, ¶ 15, 776 A.2d 1229. *Quantum meruit* describes a form of recovery for material or services provided under an implied or quasi-contract theory of liability. The Law Court has been "reluctant to impose quantum meruit liability on municipalities when the services rendered were not authorized by the municipality." *Forrest Assocs.*, 2000 ME 195, ¶ 13.

In this case, the court finds that the Plaintiff has failed to prove its entitlement to recovery under *quantum meruit*. The court has found that as of July 1, 2015 the Sewer Maintenance Contract between the Town and Ellis Construction had expired and had not been renewed. Ellis Construction performed the cleaning of the pump stations during the week of July 4, 2015 without the benefit of a contractual relationship with the Town and under circumstances where it knew or should have known that the renewal of the contract was still undecided by the Select Board. Unlike its 2009 Sewer Maintenance Contract with the Town, the 2013 contract did not automatically renew. Rather, Ellis Construction performed that work because it was its past practice to do it that particular week. Ellis Construction has not shown that it had a reasonable expectation of payment under an implied or quasi contract theory. Indeed, the Sewer Maintenance Contract explicitly provides that it must not be interpreted as creating any expectation of a continuing business relation between the Town and the Contractor. Accordingly, judgment will be entered for the Defendant on Count II of the Amended Complaint.

---

[12] These factors are questions of fact. *See Paffhausen v. Balano*, 1999 ME 169, ¶ 9, 740 A.2d 981.

## D. FOAA Violation (Count IV)

The Plaintiff has alleged that the executive session of the Farmingdale Select Board on September 23, 2015 was not permitted by 1 M.R.S. §405(6). The Plaintiff is seeking the imposition of a fine upon the Defendant for a civil violation.[13] Title 1 M.R.S. §410 provides:

> For every willful violation of this subchapter, the state government agency or local government entity whose officer or employee committed the violation shall be liable for a civil violation for which a forfeiture of not more than $500 may be adjudged.

A penalty for a civil violation under the Maine Freedom of Information Act is only enforceable by the Attorney General or some "other appropriate public official." 17-A M.R.S. §4-B(1). *See Lewiston Daily Sun v. School Admin. Dist. No. 43*, 1999 ME 143, ¶ 11, 738 A.2d 1239; *Scola v. Town of Sanford*, 1997 ME 119, ¶ 7, 695 A.2d 1194.

Judgment will be entered for the Defendant on Count IV of the Amended Complaint.

## E. Prompt Payment Act (Count V)

Maine's Prompt Payment Statute applies to construction contracts, either written or oral, "to perform or to supply materials for work on any real property." 10 M.R.S. §1111(2). The law requires the "owner" of real property on which work was performed "to pay the contractor strictly in accordance with the terms of the construction contract." 10 M.R.S. §1113(1). Penalties and attorney fees are recoverable pursuant to and in accordance with 10 M.R.S. §1118(2). The term "owner" includes municipalities. 10 M.R.S. §1111(6).

---

[13] The Plaintiff has not alleged, and no evidence was presented at trial to suggest, that the Select Board took any "official action" while in executive session on September 23, 2015. Thus, the Plaintiff has not asked the court to declare any action of the Select Board "null and void" in accordance with 1 M.R.S. §409(2).

"[T]he remedies provided by the prompt payment provisions are intended to augment damages that are traditionally available for contract or quantum meruit claims . . . ." *Jenkins, Inc. v. Walsh Bros.*, 2001 ME 98, ¶ 24, 776 A.2d 1229. Because the prompt payment statute applies to contract or implied contract claims, it does not, in the court's view, provide relief and its remedies are not available for an unjust enrichment claim. The court has previously found that the Plaintiff has not prevailed on its breach of contract and *quantum meruit* claims. Accordingly, judgment will be for the Defendant on Count V of the Amended Complaint.

## CONCLUSION

The entry is:

Judgment for the Defendant on Counts I, III, IV and V of the First Amended Complaint.

Judgment for the Plaintiff on Count II of the First Amended Complaint in the amount of $1,100.

The Clerk is directed to incorporate this Decision and Judgment into the docket of this case by notation reference in accordance with M.R.Civ.P. 79(a).

Dated: April 12, 2018

William R. Stokes
Justice, Superior Court

18